JAMES H. HOLT vs. LEWIS C. CLEMMONS — Appeal from Washington County.

The decree of a court of competent jurisdiction, ordering an administrator to convey title to land, which decree purports to be founded on a title bond executed by the intestate, is evidence that the intestate did execute the bond.

In a suit for title or such a bond, it is not essential to the validity of the decree or the title executed under it, that the heirs of the intestate should have been made parties to the suit.  [16 Tex. 413; 20 Tex. 81; 24 Tex. 441.]

This suit was brought by the appellee (Clemmons) against the appellant (Holt) to recover certain sums of money alleged to be due on promissory notes.  Holt pleaded a failure of the consideration for which the notes were given.  The pleadings and proof show that the consideration for the notes was the price agreed to be paid by Holt for a tract of land, and for which Clemmons had given his bond to execute the title when the price agreed upon for the purchase was paid.  Holt alleged, in resisting the payment of the notes, that Clemmons had no title to the land, and could not comply with his covenant to convey the title to him upon the payment of the purchase money, because the title was in the heirs of one James Hensley, deceased.  The proof showed that some time previous to the sale to Holt, Clemmons filed a petition in the district court of Washington county, alleging that James Hensley in his lifetime had executed to him a bond to make titles to this land, and praying that the administrator of Hensley might be cited to appear and answer the petition, and that by a decree of the

court he should be required to make the title. The administrator accepted service, and stated in his answer that he had no objection to a judgment being rendered as prayed in the petition, upon the plaintiff's paying the costs of the suit. The heirs of Hensley were not made parties. A decree was rendered upon the petition and answer, that the plaintiff recover of the defendant the land mentioned, and the administrator then executed the title to Clemmons.

The defendant, Holt, further alleged in his answer as an additional ground of the incapacity of Clemmons to make a title to him, that he (Clemmons) had previously sold all his right to the land to one Bolin, and that he had no right to sell at the time he sold to him (Holt).

The plaintiff produced at the trial, under a notice from the defendant, a bond which purported to have been executed by him to Burgess Bolin, on the 3d of May, 1843, to make a title to the land upon the payment of certain notes mentioned in it; and it was in proof that Bolin had paid a part of the price which he agreed to give for the land; and, from the recitals in the bond, it appeared that the notes had not become due at the time of the sale to Holt.

The bond from Clemmons to Holt, and the notes given by Holt to Clemmons, were all dated October 19, 1843. It was stated in proof by a witness, that, when the bond was executed, he understood from Holt that he had taken the contract off of Bolin's hands, and that the notes were executed at the time he substituted himself for Bolin in the contract; and by another witness, that Bolin died sometime previous to the date of the bond to Holt. It was also in proof that a negro of Holt's, and a white man, whom witness supposed to be a hireling, were at one time seen hewing a piece of timber on the land.

There was a verdict and judgment for the plaintiff below, and a motion for a new trial, which was overruled. The defendant appealed.

WEBB, for appellant, contended that the decree of the district court of Washington in the suit of Clemmons against the

administrator of Hensley, could not operate to divest the heirs of Hensley of their right to this land, and that therefore the deed from the administrator to Clemmons conveyed no title to the land.

By the common law, which was the law of this country when these proceedings were had, the land descended to the heirs, and did not go to the executor or administrator. [3 Bacon's Abr. 469, tit. Heir and Ancestor; id. 62, tit. Administrator and Executor; 3 Jacob, p. 244, tit. Heir.]

The only exception made by statute to this common law rule is when it becomes necessary, in default of other assets, to resort to the land for the payment of debts. That exception does not apply to this case. [Laws Texas, vol. 4, p. 119, sec. 29.]

The heirs of Hensley were not made parties to the suit, nor does it appear they had any knowledge of it. The presumption is, from the way it was conducted, that they had not. Had they been made parties, or some person appointed to defend for them, a number of good defenses might possibly have been set up to show that the plaintiff was not entitled to a decree; such, for instance, as that their ancestor did not make the bond (it was not proved on the trial that he did), or that it had been relinquished, or that a counter bond had been given.

If such a proceeding as was had in the district court of Washington gave power to the administrator to convey away the lands of his intestate, then by collusion and fraud he might deprive the heirs of their whole inheritance, without the possibility of a remedy.

The heirs not being made parties to the suit, the court had not jurisdiction to decree a conveyance of the land; the decree was therefore *coram non judice*, and the deed made under it by the administrator did not pass the title to Clemmons; consequently he could make no title to Holt.

2d. If Clemmons acquired the title by the deed from the administrator of Hensley, he had passed away the right to convey it previous to his sale to Holt. The right was then in the heirs of Bolin; and had he conveyed the title to Holt, the

heirs of Bolin might, upon the payment of the notes, regard Holt as their trustee, and compel him to reconvey to them. [1 Johns. Ch. R. 288, 300, 566, 574; 4 id. 136; 5 U. S. Con. R. 485; 1 Peters, 309.]

The statement that Holt had agreed to take the contract off of Bolin's hands is explained by taking all the evidence together. He could not have said that he had contracted with Bolin to take it, because the testimony shows that he substituted himself for Bolin at the time he executed the notes, and that Bolin died some time before that period. It is most apparent, then, that he only intended to say he had agreed to purchase the land from Clemmons at the price which Bolin was to have given for it, supposing Bolin's contract to be at an end. But Clemmons had no right to sell to him after having sold to Bolin, and having done so, he is not entitled to recover the purchase money. If Clemmons cancelled the contract with Bolin before his death, he could have shown it at the trial. The sale to Bolin was put directly in issue. Holt showed that such a sale had been made, and it was for Clemmons to show that it had been rescinded; otherwise the presumption is that it remains in force, and that the right to the land is in the heirs of Bolin.

TAYLOR for appellee; no brief filed.

Mr. Justice LIPSCOMB delivered the opinion of the court.[1]

There is no bill of exceptions in this case, and if the judgment can be reversed, it is on the ground that the court below erred in not granting a new trial on the motion of the appellant, upon the ground that the verdict was contrary to evidence. The defense set up against the payment of the notes sued on is, that they were given in consideration of the purchase of two hundred acres of land sold by the plaintiff below to the appellant; that he had represented himself to be the owner of the land, and had given bond to make a good title to the appellant on payment of the purchase money; that the

---

[1] NOTE.— Mr. Justice WHEELER, being unavoidably absent, did not participate in the decision of this and the subsequent cases reported in this volume.— REPORTER.

title was not in him, the appellee, but in the heirs of Hensley; and if not in them, that the appellee had sold the same land to one Burgess Bolin, since dead, and given him a bond for the same.

The evidence in support of the title being in the heirs of Hensley was certain proceedings had in the district court of Washington county, wherein the appellee was plaintiff, and Walter C. Cooper, administrator of Hensley, defendant, which proceedings were in 1841; in which the plaintiff asked the court to decree a title in his favor, to be made by the administrator in conformity with the conditions of a bond made by Hensley to him in 1837, to make title to a certain tract of land described in the petition; which proceedings resulted in a decree and title by Cooper, as administrator of Hensley. That the land sold by the appellee, Clemmons, to the appellant, is a part of the land so conveyed by Cooper to the appellee.

There was evidence tending to prove Holt in possession of the land, and none of an ouster, or any outstanding title in any one else; and there was no evidence of any facts from which the jury could have inferred fraud in the concealment of any facts as to the character of title of the appellee. Indeed, his title being a matter of record under the decree, the appellant must be held to have had notice. Holt made no offer for a rescission of the purchase and restoration of possession to Clemmons. There was no exception to the charge of the judge. Under such circumstances, was it not a matter of inference fairly to be deduced by the jury, that Holt purchased with his eyes open, and was willing to risk Clemmons' title against any title that might be set up by the heirs of Hensley? If so, on this point the verdict was not contrary to evidence. This would dispense with the necessity of a decision from the court on the point raised by the appellant's counsel, that the proceedings did not divest the heirs of Hensley of their title. But admitting it was necessary to pass upon the effect of a decree when the administrator, and not the heirs, was made party, yet we are bound to give credit to that decree, so far as it affords evidence of the facts it assumes to rest upon, and it purports to be

founded on a bond for title made by Hensley; and although the principle of law may be true, that at law title vests in the heir by the death of the ancestor, yet it would vest with the incumbent obligation to make title, and a court of chancery would enforce the obligation, and would restrain the heirs from disturbing the possession of Clemmons and those claiming under him. It was but a fair inference for the jury to make that Holt knew all this, and was willing to take the risk of any trouble that the heirs might give him, well knowing that his title would be sustained.

The other ground relied on to show the incapacity of Clemmons to make title — his previous sale of the same land — on examination will be found equally unsubstantial as a defense. A bond was given in evidence from Clemmons to Bolin for title by the appellant, and this bond was in possession of the obligor (if I correctly understand the statement of facts), and produced by him on the trial, under a notice to produce it, which came from the appellant. The reasonable presumption arising from the possession is, that it had been cancelled. This, taken with the evidence of a witness that Holt told him he had taken the place of Bolin, and that the notes were at that time given, and the notes of Bolin to be cancelled, left the conclusion that the sale to Bolin had been `cancelled, and that Holt knew of the fact of such rescission of the contract, and was satisfied with the validity of the rescission. In the absence of proof, the jury were bound to presume that it had been done in a legal way. We are not prepared to say that the verdict was contrary to evidence, and even if it was doubtful whether it was sufficient to sustain the verdict, we would not on that ground be authorized to say the court below erred in not setting aside the verdict. If not without evidence, or contrary to evidence, we would not distrust the finding of the jury. The judgment is affirmed.