ADAM GUILFORD ET AL. V. JAMES H. LOVE ET AL.

1. PARTIAL RECORDS IN PROBATE PROCEEDINGS.—A certified copy of proceedings had in the Probate Court in an estate, is admissible, it relevant, so far as it goes. It is not rendered incompetent because not complete, or because other proceedings may control its effect.

2. CONSTRUCTION OF ORDERS IN SAME ADMINISTRATION.—A sale under an order of the Probate Court, of a tract of land, does not convey to the purchaser an interest in the tract inconsistent with an interest therein recognized by the same court in proceedings had in the estate. The probate sale only conveyed the interest of the estate.

3. TRESPASS TO TRY TITLE—TITLE.—In such action, plaintiff, on showing title either in severalty or in common with others not joined in the suit, can recover against a mere trespasser.

4. SPECIFIC PERFORMANCE IN PROBATE COURT.—It seems that in proceedings to enforce a written contract for sale against an estate, in the Probate Court, under the Probate act of 1848, it was not necessary that the heirs be made parties, and be cited, as was required in the final partition.

5. SAME.—Such proceedings have been recognized as valid, in the absence of service on the heirs. (George *v.* Watson, 19 Tex., 369.)

6. CONSTRUCTION OF ORDER OF PROBATE COURT.—An order in the Probate Court declaring " that D is entitled to one-half of said league of land," evidences an adjudication in the court upon the subject; as do the words it "having been shown to the satisfaction of the court" import a trial.

7. A FAILURE TO PERFECT A PARTITION WILL NOT AVOID THE DECREE AWARDING IT.—After such adjudication, and after a commission to make partition in accordance therewith had made their report, the court ordered that the administrator make deed for the half set apart within one month : *Held,* That the failure of the administrator to make such deed did not avoid the adjudication as to the extent of the interest.

8. JURISDICTION OF PROBATE COURT.—In a case involving the effect of proceedings had under the Probate act of 1848 : *Held,* That the County Court was a court of record of general jurisdiction in all

matters relating to the administration of the estates of deceased persons.

9. JUDGMENTS OF PROBATE COURT PRESUMED REGULAR. — The judgments of said court in an administration within the scope of the power granted it by law, and embracing and appertaining to the subjects within the estate administered, intrusted by law to its control and action, were to be regarded, in any collateral action calling their validity in question, as judgments of any other court of record of general jurisdiction, and entitled to the same presumptions in support of their validity.

10. APPROVED.—Alexander v. Maverick, 18 Tex., 179, discussed and approved.

11. CASES DISAPPROVED.—Cases prior to Alexander *v.* Maverick, and differing from it as to the character and extent of the jurisdiction of Probate Courts, expressly declared as not authoritative.

12. PRESUMPTION OF NOTICE TO SUPPORT JURISDICTION.—The weight of authority seems to establish the proposition, that where the record is silent on the subject of notice, the judgment of a court of general jurisdiction will support itself, and in a collateral action cannot be impeached for want of alleged jurisdiction over the parties.

13. SAME.—In the absence of citation for the administrator in the record, and of recitals of service, notice will be presumed, to support the order of the court adjudging half the league of land, as against the estate.

14. SAME—EXISTENCE OF ADMINISTRATION.—From an order in the records of the County Court purporting to have been made in an estate, certified to be from such records, it will be presumed that the estate was open, and that the order was made in the regular course of proceeding in said estate.

15. SPECIAL PROCEEDINGS.—In courts of minor grade, with inferior jurisdiction, when the proceedings are not regularly conducted in the course of the common law, or where some extraordinary power is conferred upon a court of general jurisdiction to do some particular thing in a particular way, or under particular circumstances, being a departure from its ordinary course of proceeding, the common law requires the record to show those things necessary to bring into exercise the power of the court.

16. CHARACTER OF JURISDICTION OF THE SEVERAL COURTS.—All our courts are limited in their jurisdiction with reference to the division of judicial powers among them, and they are special with reference to what may be adjudicated by each of them. They are not thereby all made courts of inferior jurisdiction, whose judgments are void unless the record shows the antecedent facts necessary to call their power into exercise.

17. PROCEDURE IN PROBATE COURTS.—Mode of procedure in Probate Courts discussed, and therefrom conclusion reached that they should be held to be of general jurisdiction within the division of subjects allotted to them.

18. SPECIFIC PERFORMANCE AND PARTITION IN PROBATE COURTS.— The authority in Probate Courts, in act of 1848, authorizing proceedings for specific performance of written contract for sale of land, made by the deceased, (Paschal's Dig., 1313,) and that providing for partition at suit of a holder of joint interest with the estate, (Paschal's Dig., 1367,) are not such special proceedings as will require the record affirmatively to show every step, but are within the general jurisdiction of the court, and supported by presumptions of regularity.

19. SAME.—That these two proceedings are joined, is no objection to the action of the court upon each.

20. REOPENING ADMINISTRATION.—An order was had in 1849. A subsequent order was had in 1870 on a reopening of the estate : Held, The excuse for reopening estate for purpose. of completing a partition was not sufficient, that being the only purpose shown.

APPEAL from Robertson. Tried below before the Hon. John B. Rector.

The facts are very fully stated in the opinion.

*William H. Hammon*, for appellants.

I. The orders (not decrees) of the Probate Court of Milam county, in evidence in this case, do not " vest in James Dunn one-half interest in the Trudo league of land."

1st. As to the petition and its sufficiency. (1 Paschal's Dig., arts. 1313, 1357, 1367 ; Finch *v.* Edmonson, 9 Tex., 512–515 ; Littlefield *v.* Tinsley, 26 Tex., 357 ; Mitchell *v.* Runkle, 25 Tex. Supp., 136 ; Runnels *v.* Kownslar, 27 Tex., 532.)

2d. As to the person by service. (1 Paschal's Dig., arts. 1313, 1357, 1358 ; Millican *v.* Millican, 24 Tex., 439 ; Littlefield *v.* Tinsley, 26 Tex., 356, 357 ; Hollingsworth *v.* Barbour, 4 Pet., 475–477 ; Waldon *v.* Craig, 14 Pet., 154 ; Webster *v.* Reid, 11 How., 460 ; 1 Smith's Lead. Cas., 1013–1015 ; Gibbs *v.* Shaw, 17 Wis., 204 ; Wheeler *v.* Curtis, 11 Wend., 654 ; and many of these cited under preceding head.)

3d. As to subject-matter. (Shriver's Lessee *v.* Lynn, 2

How., 58; United States *v.* Arredondo, 6 Pet., 709; and most of the authorities cited under preceding heads.)

4th. As to parties to partition. (Loller *v.* Frost, 38 Tex., 212; Newland *v.* Holland, 45 Tex., 588; Lewis *v.* Ames, 44 Tex., 320, 349; Stephenson *v.* McFaddin, 42 Tex., 323, 329; Oliver *v.* Robertson, 41 Tex., 422.)

5th. As to special and limited jurisdiction. (1 Paschal's Dig., arts. 1313, 1357, 1367; Finch *v.* Edmonson, 9 Tex., 513, 514; Jones *v.* Taylor, 7 Tex., 243, 244; Mitchell *v.* Runkle, 25 Tex. Supp., 132, and most of the authorities cited above; Foster *v.* Glazener, 27 Ala., 396, 397; Thatcher *v.* Powell, 6 Wheat., 119, 127; Shivers *v.* Wilson, 5 H. & J., 132, 133; Wheeler *v.* Curtis, 11 Wend., 654; Williamson *v.* Berry, 8 How., 537; Boswell *v.* Dickerson, 4 McL., 262; Kempe's Lessee *v.* Kennedy, 5 Cranch, 185; 2 Phillips' Ev., Car. H. & A., notes 306, p. 196.)

6th. As to pleading and proving consideration for land. (Tumlinson *v.* York, 20 Tex., 697.)

II. The power of the Probate Court over the subject-matter was exhausted by selling the land, confirming the sale, and ordering deed to be made; and these orders were void. (Withers *v.* Patterson, 27 Tex., 500; 23 Ga., 569.)

III. The orders of the Probate Court do not in terms, nor by any reasonable intendment, vest title in Dunn; nor could the court by decree have vested title.

IV. By the terms of these orders, the administrator was to make title within one month after they were granted. By their own provisions, they had become inoperative and void over twenty years ago; and during all this time there is not an affirmative act asserting any right under these administrations, but an entire abandonment of everything. There is nothing on which to base a presumption in favor of plaintiffs.

V. The transcript from the records of the Probate Court of Milam county were inadmissible in evidence, and should have been excluded on objections made by appellants. (Hamilton

*v.* Ward, 4 Tex., 361; Frederick *v.* Pacquette, 19 Wis., 541; Young *v.* Rosenaum, 39 Cal., 653, 654.)

*D. H. Prendergast* and *W. E. Collard,* for appellees.

I. The transcripts from probate records of Milam county for 1849 and 1850 were properly admitted as evidence. (Act of 1848, Paschal's Dig., arts. 1313, 1367; act of February 2, 1844, Hart. Dig., art. 1070, secs. 2, 3; Paschal's Dig., arts. 4710, 5023; Lynch *v.* Baxter, 4 Tex., 439, 440–446; Burdett *v.* Silsby, 15 Tex., 618–620; Alexander *v.* Maverick, 18 Tex. 192–196; George *v.* Watson, 19 Tex., 369, 370; Peters *v.* Phillips, 19 Tex., 70–76; Babb *v.* Carroll, 21 Tex., 768–770; Shannon *v.* Taylor, 16 Tex., 419, 420.)

II. The power of attorney, or deed, and the bond for title, made by John Trudo and Susan Trudo, his wife, to Niles F. Smith, June 30, 1836, and the transfers thereon, by Niles F. Smith to James Dunn, dated November 22, 1838, were admissible as ancient instruments, with the evidence offered to support them. (Stroud *v.* Springfield, 28 Tex., 662, 663; Mapes *v.* Leal's Heirs, 27 Tex., 349; Portis *v.* Hill, 30 Tex., 561; Greenl. Ev., secs. 21, 570.)

III. The effect of the orders of the Probate Court of Milam county of 1849 and 1850 was to vest title to the thirteen labors of the Trudo league in James Dunn, which, with deed from James Dunn to D. H. and Mary Love, and proof of heirship, proved title in plaintiff.

IV. The chain of paper title, introduced in evidence by appellees, made them tenants in common with the heirs of Trudo, and authorized them to recover in this suit, independent of their title through the decrees of the Probate Court.

V. The prior possession of plaintiffs by their tenants, Herring and Follis, was sufficient title to enable them to recover against the defendants as naked trespassers.

ROBERTS, CHIEF JUSTICE.—This suit was brought in trespass to try title on the twenty-sixth day of March, 1873, in

the District Court of Robertson county, by James M. Love, administrator of the estate of D. H. Love, deceased; Joseph Love, a minor, by his next friend, Mary Love, a *feme-sole;* Tennessee Collard and her husband, F. R. Collard; Patrick H. Love, Benjamin F. Love, and Madora Love, a minor, by her next friend, Josephus Cavitt, against Adam Gilford, Embro Jones, Garrison Dickenson, T. J. Powell (*alias* Tom Powell), Joseph Williams (*alias* Joe Williams), Antony Williams (*alias* Antony Williamson), Edny Love, a *feme-sole,* and Giles Cotton, as trespassers, for the west half of the John Trudo league and labor in Robertson county.   Defendants' unlawful entry is alleged to be on the first of July, 1872, at which time, and at the institution of the suit, plaintiffs allege that they were the owners of the said west half of said league in fee-simple.

Petition describes the west half of the league by metes and bounds, and prays for judgment for title and possession of the same.

Defendants demurred generally, and answered by plea of not guilty.

There was verdict for plaintiffs for the land described in their petition, July 26, 1875, and judgment accordingly on same day.

Defendants filed a motion for a new trial, which was overruled by the court; to which defendants excepted, and gave notice of appeal to the Supreme Court.

The appeal was perfected, and the transcript filed in the Supreme Court January 20, 1876.

The defendants set up no title in themselves, either in the pleadings or in the evidence, and relied upon the deficiency of plaintiffs' title, and upon an outstanding title in the widow and heirs of one Darr, who, it is contended, purchased the whole league of land, at a sale of it by Smith, administrator of Trudo's estate, which will be more particularly noticed hereafter.   The plaintiffs claim the land, as shown by the evidence, through as many as three chains of title, as well as by prior possession, which are contended to be valid, if not

as legal, certainly as equitable titles, sufficient to maintain the action against mere trespassers.

One was a title through the title bond executed to Niles F. Smith for the one-half of said league, by the grantee, John Trudo, with transfers down to plaintiffs, which seem to have made out an equitable title to an undivided half of the land sued for, if there had been no legal partition of the land.

Another was based on three orders of the County Court of Milam county, aided by explanatory evidence, pertaining to the administration of the estate of John Trudo, purporting to have effected a partition of the league of land pursuant to and in satisfaction of said bond executed to Niles F. Smith for one-half of it.

Another was by deed from the widow and heirs of Darr, procured by plaintiffs to extinguish the outstanding title in them, if it should be found that said Darr had derived title to the half league of land sued for in this action, by the purchase referred to at the sale by the administrator, Smith.

The court, upon the trial of the case, for some reason not apparent, selected the title dependent upon the said three orders of the County Court of Milam county, isolated and separated from the auxiliary evidence, and from the bond on which they were founded, which was also in evidence, and submitted that to the jury by a single charge. That course makes the correctness of the judgment depend upon the legal sufficiency of said orders to convey either a legal or equitable title, either in severalty or in common, to the party under whom the plaintiffs claim title to the land sued for.

The said orders and charge of the court are as follows:

"PETITION FOR PARTITION.

THE STATE OF TEXAS,    }
    *County of Milam.*  }

PROBATE COURT, July Term, 1848. James Dunn, estate of John Trudo, deceased.

To the Hon. A. C. Dodd, Probate Judge of Milam county: Your memorialist would respectfully show to your honorable

court that he holds a bond of John Trudo for one-half of the headright league and labor, and that, having complied with all the conditions on his part, he is entitled to the part of the land prayed for; and prays your honorable court to appoint commissioners, to wit, to set aside to him his part of said land, and cause a title to be made to him for his part of said land; and your petitioner will ever pray.

JAMES DUNN.

CAMERON, *July* 31, 1848."

"THE STATE OF TEXAS, ⎱
        *County of Milam.* ⎰

CAMERON, *August* 2, A. D. 1849.

COUNTY COURT.—Present: Isaac Standifer, Ch. J.; F. T. Duffau, clerk; John McLennan, sheriff.

Ordered: That Joseph Webb, Thomas R. Webb, and Wm. W. Patrick be, and they are hereby, appointed commissioners to divide the league of land in Robertson county which was originally granted to John Trudo, as his headright league of land, between the heirs of Trudo and James Dunn, it having been shown to the satisfaction of the court that said Dunn is entitled to one-half of said league of land; and due and correct return make as required by law.

Approved:                    ISAAC STANDIFER,
                                *Chief Justice Milam county.*

Test: F. T. DUFFAU."

"THE STATE OF TEXAS, ⎱
        *County of Milam.* ⎰

COUNTY COURT, sitting for probate purposes. August Term, August 26, A. D. 1850. Succession of John Trudo, deceased.

Ordered: That the administrator of said estate be, and is hereby, ordered to make to James Dunn a good and sufficient title to thirteen labors of land, being a portion of the headright of said Trudo, deceased, and that part more particularly designated by the commissioners to divide and parti-

tion said headright, and that said deed shall pass and convey all the right and title of said Trudo, or his heirs, to said Dunn, his heirs and assigns, and said conveyance is hereby required to be made on or before the September term of this court; and due and correct return make as required by law.

Approved:                              ISAAC STANDIFER,
                              *Chief Justice Milam county.*"

" MINUTES PROBATE COURT of Milam county, January Term, A. D. 1870.

"Court met at 11 o'clock A. M., January 31, 1870. Present: Wm. Carrol Sypert, Judge; W. K. Homan, clerk; J. D. Nunley, sheriff. Estate of John Trudo, deceased.

"H. D. Prendergast having returned into court his bond conditioned for the faithful performance of his duties as administrator *de bonis non* of said estate, it is ordered that the same be, and is hereby, approved and stand for record.

"Succession of John Trudo, deceased. The petition of H. D. Prendergast, administrator *de bonis non* of the estate of John Trudo, deceased, coming on to be heard, praying to be ordered to and allowed to make title to  *  *  *; also, to make title to one-half league of said headright to the heirs of David H. and Mary Love, deceased, in compliance with a bond executed and delivered by John Trudo and Susan Trudo, his wife, to Niles F. Smith, and transferred by Niles F. Smith to James Dunn, and by James Dunn to David H. Love and wife, Mary Love,  *  *  *  and it appearing to the satisfaction of the court that at ———— term of the Probate Court, 1850, an order was made in the succession of John Trudo, deceased, setting apart to James Dunn one-half of said headright league of land of John Trudo, deceased, according to the tenor of a bond from said John Trudo and Susan Trudo, deceased, to Niles F. Smith, and transferred to James Dunn, and that commissioners were appointed to partition and set apart to James Dunn the said half league, and that said commissioners had made their report to the court, and the same received by the court and ordered to be re-

corded, and James Dunn by a good and valid deed had transferred the same to David H. and Mary Love, and that D. H. and Mary Love have both departed this life: It is therefore ordered, adjudged, and decreed by the court, that the administrator *de bonis non* make title to the heirs of David H. and Mary Love, deceased, to said one-half league of land, in accordance with the report of the commissioners made at a former term of the Probate Court. Land described as follows: * * *

"WM. CARROL SYPERT,
" *Chief Justice Milam County:*"

The court instructed the jury, "that if, from the testimony, you believe the plaintiffs are the heirs at law of D. H. and Mary Love, and that the land described in plaintiff's petition is the land referred to in the deed from James Dunn to David Love and Mary Love, dated 31st of August, 1850, and is the same referred to in the petition of James Dunn and the decree of the Probate Court of Milam county, on page 13 of the transcript offered in evidence of the proceedings of said court, and is the same land referred to in the two decrees of the Probate Court of Milam county relating to the John Trudo league, on pages 30 and 31 of the transcript of proceedings of the Probate Court of Milam county offered in evidence, then you are instructed that you will find for plaintiffs the land described in their petition; for the effect of said judgments and decrees of the Probate Court of Milam county was to vest in James Dunn one-half of the Trudo league of land therein described; and so far as plaintiff's right to recover in this action is concerned, it is immaterial as to whether they own the land in controversy in severalty, or as tenants in common with others not before the court. If they own said land in either capacity, they may maintain the action."

The appellees having filed a brief and motion to advance this case, presented the different assignments of errors as they appeared in the record. The appellants, in filing their brief in response, relied entirely upon the errors of the court in

admitting in evidence these three orders of the County Court over their objections, shown in a bill of exceptions, and in the charge of the court relating to them.

The following extracts from their brief will sufficiently show the questions sought to be raised by the appellants:

"Assignments of error: The first, second, fifth, and ninth assignments are practically the same, and relate to the action of the court in permitting appellees, in deraigning title, to read in evidence transcripts from the records of the Probate Court of Milam county, and to the instructions given by the court to the jury upon this evidence. They can best be considered together under the following propositions:

"First proposition: The orders (not decrees) of the Probate Court of Milam county, in evidence in this cause, do not 'vest in James Dunn one-half the Trudo league of land.'

"The bill of exceptions referred to states the objections to the record offered to be:

"First. That it is not a complete transcript.

"Second. The decrees of the court at the August terms, 1849 and 1850, are nullities, tested by themselves.

"Third. The petition of James Dunn, on which the decrees were made, was not sufficient in law, and did not give the Probate Court of Milam county jurisdiction to pass the decrees.

"Fourth. The application of James Dunn to the said court did not disclose the heirs of Trudo, the administrator, or any of the parties interested in the proceedings, except Dunn.

"Fifth. There was no decree divesting and investing title.

"Sixth. The power of the court had been exhausted at a previous term, by ordering sale of the land by the administrator of Trudo's estate, which was confirmed by the court.

"Seventh. The petition of Dunn to have one-half the Trudo league set apart to him was filed July 28, 1848, when there was no law giving the Probate Court jurisdiction to decree specific performance.

"Eighth. The decree directing title to be made to Dunn

became inoperative on the 1st day of September, 1850, twenty years before the deed was made."

It will be observed that all of the objections to the admissibility in evidence of these orders, pertain to their validity as records in the administration of the estate of John Trudo, except the first and sixth, and may be considered with the charge of the court, which gives a construction to them, and recognizes their validity and competency to convey title to Dunn. As to the first objection to the transcript containing these orders, it may be remarked, that it was competent evidence, as far as it went, and could not be excluded because there might be other records pertaining to the administration of said estate. (Townsend *v.* Munger, 9 Tex., 300.)

In reference to the sixth objection to the admissibility of said records in evidence, there is found in appellants' brief the following explanation, to wit: "At the September Term, 1849, Thomas Smith petitioned the court to remove N. C. Raymond, administrator of the Trudo estate, and to appoint him; and at the same term an order was entered removing Raymond and appointing Smith. At the November Term, 1849, Smith, administrator, applied for an order to sell so much of the land as may be necessary to pay debts, which was granted at the same term. Smith, administrator, also petitioned the court to set aside and annul the order which James Dunn had procured at the August Term, 1849, 'to divide the headright league of intestate,' urging, among other reasons, that 'the decree above referred to was *ex parte*, there being no administration on said estate at the time the above order was made, and without legal notice being given to the representatives of his intestate, and prays the whole matter be set aside and declared null and void.' On the hearing of this petition, an order was made by the court directing James Dunn to be cited to answer the petition filed by Smith at the March Term, 1850, and citation was issued February 25, 1850. Smith, administrator, makes report of the sale of the Trudo league of land February 5, 1850, and, at the February Term,

1850, the sale is confirmed, and administrator ordered to make title to the purchaser. These facts are evidenced by a transcript from the records of the Probate Court of Milam county, incorporated in the record in this cause." It was under this sale that one Darr became the purchaser of whatever interest the estate of Trudo had in and to the Trudo league. This sale took place after the date of Dunn's petition and the first order, and before the second order, in his favor by the County Court of Milam county. There is no necessary inconsistency in Dunn's claim by virtue of said two orders to an interest in the half league embraced in this suit, and in Darr's claim under said sale of whatever other interest the estate of Trudo had at the date of the sale. It is not shown that Darr, or his heirs, ever set up any claim to the part of the league claimed by Dunn; and it is shown in appellees' brief, and not controverted in that of appellants, that if said sale did convey any interest in the land in suit, it has been relinquished by the widow and heirs of Darr.

The point of view in which this sale to Darr is brought up as an objection to the admissibility of orders in favor of Dunn in evidence, is that, by the order of sale, the sale, and its confirmation, "the power of the court had been exhausted at a previous term, by a sale of the land by the administrator of Trudo's estate, which was confirmed by the court." If it be now admitted that this sale conveyed the better title to the land in controversy, when afterwards adduced in evidence by the defendants below, it would certainly be no ground for objecting to the admissibility of the orders in favor of Dunn, offered in evidence by plaintiffs below, in making out their case.

The court cannot exclude one order of the County Court, that may be a link in a chain of title in favor of the plaintiffs, because there may be another order or action of the same County Court to be found in the records of the same estate which, when adduced, may weaken, or even destroy, its force as evidence. Both records are admissible in evidence, if pertinent to the matter in issue.

These two grounds of objection to the admissibility of the orders in evidence being disposed of, and the others having relation to and being based upon the insufficiency of said orders to legally convey to Dunn any substantial interest in the land sued for, the real question in the case, as it is now presented, arises upon the correctness of the charge of the court, that one previously quoted being the only charge given by the court to the jury upon the trial of the case. That part of the charge which related to the heirship of the plaintiffs, and to the conveyance from Dunn to Love and wife, and the identity of the land sued for, need not be considered, as there is no substantial controversy in the case, except as to the validity of the three orders of the County Court of Milam county, upon which the plaintiffs' claim of title is made to depend by the charge of the court.

The appellants, in their briefs, raise no question upon the facts submitted to the jury by the charge, which were the heirship of plaintiffs to the estate of D. H. and Mary Love, deceased, and the identity of the land sued for as being that described in the deed from Dunn to Love and wife, and in the petition of Dunn and in the three orders of the "Probate Court of Milam county" that have been quoted.

The charge of the court assumes to construe those orders to be valid and sufficient in legal effect to convey to Dunn one-half of the Trudo league of land therein described, adding, what may not be questioned, that "so far as plaintiffs' right to recover in this action is concerned, it is immaterial as to whether they own the land in controversy in severalty, or as tenants in common with others not before the court. If they own the land in either capacity, they may maintain the action."

Appellants, in their brief, present, as grounds of objection to the validity of these orders of the County Court of Milam county, certain points under the first general proposition that has been quoted, and also other auxiliary propositions, incidental to and as sustaining the general proposition, which,

as explained in the argument, are as follows: There was a want of jurisdiction in the County Court to make said orders: because the petition of Dunn was insufficient, in not stating who was the administrator or the heirs to said estate of John Trudo; because it is not shown in the record that the administrator or the heirs were cited or made parties to the proceeding; because said court had no power to make partition of the land, under the law as it then stood, until Dunn had first established and had adjudicated his right to a part interest in the land by a proceeding for a specific performance of the contract for an undivided half interest in the land, and then only by notice to the heirs of the estate, as well as to the administrator, and that both proceedings—to wit, for specific performance, and for a partition of the land—could not legally be joined in the same proceeding in said court; because in a proceeding for partition said court has only a special limited jurisdiction, in which everything must appear in the record of the proceedings necessary to give the court jurisdiction of the matter adjudged, without the aid of the presumptions usually indulged in support of the action of a court of general jurisdiction; because said petition should have alleged, and there should have been proved, a consideration for the obligation of the bond for one-half of the league of land claimed by Dunn in his application to the court for the order.

The additional and auxiliary propositions are, that " the orders of the Probate Court do not in terms, nor by any reasonable intendment, vest title in Dunn, nor could the court by decree have vested title."

" By the terms of these orders, the administrator was to make title within one month after they were granted. By their own provisions, they had become inoperative and void over twenty years ago; and during all this time there is not an affirmative act asserting any right under these orders, but an entire abandonment of everything. There is nothing on which to base a presumption in favor of plaintiffs."

And in conclusion of appellee's brief it is said: "All the other issues raised in the court below are eliminated by the charge of the court, and we deem it unnecessary to urge them here."

Before considering these objections, it may be well to see what these two orders, made in 1849 and 1850, amount to, and what are the statutory provisions applicable to them.

The application of Dunn is headed "Petition for partition." It states that he holds a bond for half of the Trudo league of land; that its conditions have been complied with; asks the appointment of commissioners to set apart to him his part of the land, and that a title to the same shall be made to him for his part. This was July 31, 1848. It evidently contemplated two things: first, the establishment of his right to half of the land under and by virtue of the bond for title which he held; and, second, a partition and decree of title to him in severalty to his part.

On the 2d of August, 1849, the County Court made an order, appointing commissioners to divide the league of land "between the heirs of Trudo and James Dunn, it having been shown to the satisfaction of the court that said Dunn is entitled to one-half of said league of land."

Here is evidence of an adjudication in favor of Dunn upon his claim of half of said land under the bond; not very formally made, but as much so as may be often found in the records of such a court in that period.

At the November Term of that year, Smith, the administrator of the Trudo estate, (the former administrator, N. C. Raymond, having been removed, and Smith appointed at the September Term, 1849,) petitioned the court to set aside and annul the above order, made in favor of Dunn, upon the ground that it was *ex parte*, there being no administration at the time it was made, and no legal notice to the representatives of the intestate. A citation was ordered, and issued, for said Dunn to answer this petition.

At the February Term, 1850, Smith reported a sale of the

estate's interest in the league of land, which was then con-
firmed, and title ordered to be made.

Notwithstanding these proceedings of Smith, the adminis-
trator, on the 26th of August, 1850, an order was made recog-
nizing the validity of the previous order in favor of Dunn, as
to his right, by ordering and requiring a title to be made to
him for thirteen labors of the league, being that part desig-
nated by the commissioners appointed to divide said head-
right, shówing that the commissioners had set apart his land
by a partition reported to the court.

As these orders do not show what part of the land was set
apart to Dunn, and as there was no deed shown to have been
then made by the administrator, it cannot be said that any
complete partition was effected, so as to give plaintiffs, through
Dunn, a right in severalty to the particular portion of the
league sued for.   Why the court should have excluded from
consideration, by the shape given to the charge, the evidence
tending to show what the report of the commissioners was,
in aid of the orders in fixing the locality of the land set apart
by them to Dunn, cannot well be imagined.   The legal effect
of the two orders themselves cannot amount to more than an
adjudication by the court of Dunn's right to an undivided
one-half of the league; which they do, if they are not liable
to the other objections, for invalidity, taken to them in the
brief of appellees, heretofore specified.

When the petition of Dunn was filed, the act of 1846 was
in force, and that was meagre in its terms generally, and con-
tained no specific provision for such a proceeding as the peti-
tion contemplated; and hence, it may be presumed there
was nearly a year's delay.   (Hart. Dig., 1095, 1106.)   In the
meantime the act of 1848 was passed, which took effect on
the 7th of August, 1848, before the first order was made, on
the 2d of August, 1849.   That act contained two provisions
on the subject.   In article 1313, Paschal's Digest, it was pro-
vided, "that when any person shall sell property, and enter
into bond or written agreement to make title thereto, and

shall depart this life without having made such title," the holder of the bond may file a complaint in the County Court where letters of administration on the estate were granted; the administrator shall be cited, and if the chief justice shall find that such sale was legally made, he shall order the administrator to make title, &c.  In article 1367 it was provided, that " any person or persons having a joint interest with the estate of a decedent in any property, real or personal, may make application to the County Court from which letters testamentary or of administration have been granted on said estate, to have partition thereof; whereupon the court shall proceed to make partition between the applicant or applicants and the estate of the deceased; and all the rules and regulations contained herein, in relation to the partition and distribution of estates, shall govern partitions under this section, so far as the same may be applicable."

The rules and regulations here referred to are contained in articles 1357 to 1367 inclusive, Paschal's Digest, and provide for the partition and distribution of an estate between the heirs and distributees after or upon the closing of the administration, after an application in writing for that purpose, and notice upon all of the parties interested shall have been served in the manner therein prescribed.  Whether notice to heirs and others interested in the partition and distribution of the estate is a regulation applicable to a proceeding by one holding a title bond for an undivided half interest in a tract of land belonging to the estate, is not so plain, in view of the reason of the thing, or of the authorities that will be hereafter referred to, wherein suits have been maintained against the administrator alone upon such bonds, both in the County and District Courts; for in an ordinary partition and distribution upon a close of the administration, as contemplated in articles 1357 to 1367 of Paschal's Digest, the administrator, as such, has usually no interest to protect, as the whole estate is about to leave his hands, and to be given to the persons whom the court adjudges to be entitled to it; and in such

case the heirs and distributees are necessary parties to the proceeding for it to bind them, whether the partition be made by a suit in the County Court or in the District Court. (Cryer v. Andrews, 11 Tex., 181; Millican v. Millican, 24 Tex., 438; Lewis v. Ames, 44 Tex., 348; Newland's Administrator v. Holland, 45 Tex., 588.)   But where a suit is brought by a person holding a bond for title to land, calling either for a particular tract of land or for an undivided half interest in it, the object is to withdraw property from the administration of the estate, and is against the interest of the administrator; and it would be his duty to protect the interest of the estate just as much as when a creditor seeks to withdraw property from the estate by a proceeding to have land sold to pay a debt against the estate, by a sale of land in which, under this act of 1848, it is not necessary that the heirs should be cited and made parties to the proceeding in the County Court.   (George v. Watson, 19 Tex., 369.)   It was decided at an early day, that from the general authority intrusted to an administrator by the Probate laws, he could, without the heirs being joined with him, bring and defend suits for land to protect the interests of the estate.   (Thompson v. Duncan, 1 Tex., 485; Howard v. Republic, 2 Tex., 312; Graham v. Vining, 2 Tex., 433.)

It will be found that this court has recognized proceedings in the County Court upon such a bond against the administrator without the heirs being joined, and wherein there is nothing said as to the necessity of joining them in the suit. (Peters v. Phillips, 19 Tex., 70; Tumlinson v. York's Administrator, 20 Tex., 694.)

It is, however, unnecessary for us to decide that in this case, as the proceeding, as exhibited in the two orders of 1849 and 1850, fell short of a complete partition, and it will be sufficient if they can be held to have gone so far as to adjudge and invest Dunn with an interest in common in the land sued for.   One of the grounds of objection before recited is, that they do not.   If the orders are closely examined, it

will be found that there is a declaration of record of the find-
ing of the court of the material conclusion of facts necessary
to sustain a specific performance of the contract of the bond
for title, to wit, "that Dunn is entitled to one-half of said
league of land," which conclusion of fact "having been
shown to the satisfaction of the court," as therein expressed,
shows that there had been a judicial investigation to ascer-
tain that fact, prompted by and in pursuance to the applica-
tion of Dunn previously made to the court. This derives
support and implied confirmation as an adjudication from the
additional part of the order made in connection with it, and
in the terms of the subsequent order of 1850, in appointing
commissioners to divide the land, and ordering the admin-
istrator to make to Dunn a title to the land that had been set
apart to him by the commissioners, which, if properly ordered
in that case, was necessarily based upon and presupposes an
adjudication by the court in favor of Dunn for one-half of
the league of land for which he had applied. It is contended,
that as the second order required the conveyance by the ad-
ministrator to be made in one month, and it is not shown that
it was ever done, the whole proceeding is void, as having
been abandoned before its completion. Why the deed was
not made pursuant to the order, does not appear. It is not
shown that there was any appeal from either of the orders,
or that they were set aside, although the record does show
that the administrator instituted a proceeding in the same
court to have the first order set aside, notwithstanding which,
however, the second order was afterwards made, confirmatory
of and to carry out the first order. The abandonment or
neglect to have carried out to completion so much of the or-
ders as related to a partition, so as to vest in Dunn a particu-
lar portion of the land in severalty, as provided for in section
106 of the act of 1848, (Paschal's Dig., art. 1367,) would not
of itself be an abandonment of or render void an adjudication
in favor of Dunn for one-half interest in the land by virtue
of his bond for title, as provided for in section 53 of said act of

1848, (Paschal's Dig., art. 1313,) under which suits have been
brought in the County Court on similar bonds for a part in-
terest in the land, and recognized by this court as properly
brought, in 19 Texas, 704, and 20 Texas, 694, before cited.
(See, also, Allie *v.* Schmitz, 17 Wis., 175.)

Having disposed of the objections to the validity of these
two orders of the County Court made by appellees, on the
grounds of the order of sale of the remaining interest of the
league of land to Darr, of the intrinsic defect as alleged in
the said orders themselves to convey any interest in the land
in Dunn, and of want of power of the County Court to adju-
dicate that interest in his favor, if it had proper jurisdiction
of the case, and of the alleged abandonment of the right so
adjudicated, we now approach the consideration of the nature
of the jurisdiction of the County Court in such a proceeding,
which involves its extent as to whether it is general, or special
and limited; the mode of proceeding to cause the jurisdiction
to attach, or to bring into active operation the powers of said
court, so as to enable it to make a valid order, when that
order is brought in review in a collateral action; and what
preliminary acts in that mode of proceeding, as prescribed by
statute, may be presumed in support of an order found to
have been made by said court in its records, in the absence
of their being shown in the order itself, or in the records of
the court relating to it. These are the questions substantially
raised by the remaining objections of appellees to the valid-
ity of these two orders of the County Court in Milam county
in 1849 and 1850.

These questions may be solved, as to the extent of the
jurisdiction of the County Court, by reference to the case of
Alexander *v.* Maverick, 18 Tex., 179, and cases following in
the same line of decision, in which it was fully settled, that
the County Court was a court of record of general jurisdiction
in all matters relating to the administration of the estates of
deceased persons, and that its judgments in an administration
of an estate, within the scope of the powers granted to it by

law, and embracing and pertaining to the subjects within the estate administered, intrusted by law to its control and action, were to be regarded in any collateral action calling their validity into question as the judgments of any other court of record of general jurisdiction, and entitled to the same presumptions in support of their validity.

That was a suit, by the heirs of Edwin Alexander against Maverick, to clear the title and recover the possession of three and a half leagues of land, the latter claiming title by sale of the same, as part of said Alexander's estate, by the administrator, under an order of court of March or April, 1843, which was made under the law of 1840, requiring the administrator to apply for a sale of land, upon a showing of its being necessary to pay debts, and upon his failure to do so, any creditor might do it; (Hart. Dig., arts. 1023, 1024;) which general law was modified by an act, of one section only, of the 25th of February, 1843, that provided, that in no case shall any administrator be required to sell land, except upon application, by petition, of some creditor, heir, or legatee. (Hart. Dig., art. 1067.)   It was contended, in a full and able brief, arraying the previous decisions, that this sale was void, because there was no petition filed for the sale of said land by a creditor, and it could not be sold on an application by petition of the administrator, under the law as it stood at the time the order was made for the sale of one of the leagues, in March or April, 1843; the sale of the other two and a half leagues being made under an order of the March Term, 1844, after, as it was contended, the administrator had been discharged, upon a close of the administration, and that the sale under it was therefore void.   As to the last point, the court held that his subsequent acts showed that he was still recognized as administrator, and that was sufficient in a collateral action.   On the first point, it was decided that a written petition for the sale of the land was not necessary, as a jurisdictional prerequisite fact, to call into exercise the power of the County Court to order a sale of land, and that such

fact need not appear of record when the validity of such order is called in question in a collateral action, as that was. In the opinion, it was said that "It has been assumed generally that a petition was necessary to give jurisdiction to the Probate Court to order a sale of property of deceased persons, or to call into exercise the jurisdiction of the court over that matter. But the question has not been necessarily involved in the decision of any case. The case of Finch v. Edmonson was determined upon the particular provisions of the act of 1846, (Hart. Dig., art. 1099,) and the sale was adjudged void on account of fraud, which is always a sufficient ground for setting aside sales and annulling the most solemn acts and judgments of courts, whether of limited or general jurisdiction." Again, it is said: "It does not appear affirmatively by the record in this case that the application was not made by a petition in writing; but if it did so appear, I apprehend it could not, on principle, be held to defeat the Probate Court of its jurisdiction to order the sale on the application of an administrator; nor could the purchaser be affected by the irregularity, if such it was, in making the order. He was not required to look beyond the judgment of a court of competent jurisdiction."

Force is given to these views here expressed by the decisions of other States, — Georgia, Alabama, and Pennsylvania,—quoted in support of them. Similar views, though not so full, were expressed in the case of Burdett v. Silsbee, and similar authorities referred to, which involved the validity of an order of sale under the act of 1848. (15 Tex., 604.) We find the initiative to this view in Poor v. Boyce, 12 Tex., 440, which was a sale of land by an order under the law of 1840, wherein the petition for the sale of the land stated a reason for it unknown to the law. The sale was held good. These three opinions, under the laws of 1840, 1843, and 1848, were delivered by Justice Wheeler; and he here holds the same views in regard to the act of 1846, under which the case of Finch v. Edmonson was decided; and also as to a curator's

sale in 1834, afterwards decided in the case of Baker v. Coe, 20 Tex., 436, referring therein to the law of Louisiana, which was also in force, as to probate matters, at one time. The opinions that hold that a petition was necessary, and that it was filed must appear of record, in order to call into exercise the jurisdiction of the County Court to make valid an order for the sale of land, were generally delivered by Justice Lipscomb. The case of Finch v. Edmonson, 9 Tex., 512, is the leading case of this class.

In other cases, as well as in that, it was held that the court had jurisdiction when it appeared that a petition had been filed, although other things made by statute good cause for granting an order for the sale of land did not appear of record. (Lynch v. Baxter, 4 Tex., 442; Poor v. Boyce, 12 Tex., 440; Howard v. Bennett, 13 Tex., 609.)

In other cases, matters were presumed precedent to an order of sale, in order to sustain its validity in a collateral action, although they do not appear of record; as, the revocation of an order of removal (Townsend v. Munger, 9 Tex., 300); a reinstatement of administrator (Dancy v. Stricklinge, 15 Tex., 559); extension of administration beyond the year, when statute limited it to that time (Poor v. Boyce, 12 Tex., 449); continuance of administration after delay and non-action (Burdett v. Silsbee, 15 Tex., 604).

In the case of Miller v. Miller, 10 Tex., 319, the validity of a sale by an administrator, by an order of the County Court, made under the laws of 1840 and 1843, that have been previously recited, (Hart. Dig., arts. 1023, 1067,) was in question. There were numerous defects in the proceedings, for which the court held the sale to be a nullity and to convey no title to the purchaser. Amongst the rest was one that the petition for the sale of the land was filed by the administrator, and not by a creditor, or heir, or legatee, as provided for by said act of 1843. Justice Lipscomb, in delivering the opinion of the court, after referring to the cases of Lynch v. Baxter and Finch v. Edmonson, above quoted,

said: "These cases seem decisive of this case. The order of sale was made on the petition of the administrator, when, by the act of 1843, before recited, it could only be legally made, and the Probate Court could have obtained jurisdiction only, on the petition of a creditor, heir, or legatee. Hence we conclude that the order of sale and the sale were absolutely void, and gave no right to a purchaser under it." As to this construction of the act of 1843, Justices Hemphill and Wheeler expressly declined to give any opinion, and reserved it for more mature consideration, it not being necessary then to decide that question.

It became necessary to meet and decide this question about a petition filed according to the statute, and the necessity of its appearing of record to make an order of sale valid, when brought in question in a collateral action, in the case of Alexander *v.* Maverick, 18 Tex., 179, when, as we have seen, "upon more mature consideration," it was decided that an order of sale would be valid when collaterally attacked, whether the petition for the sale was filed by the administrator or by a creditor, or whether it appeared of record that a petition had been filed or not by any one, because the purchaser "was not required to look beyond the judgment of a court of competent jurisdiction."

This examination of that case, in reference to the previous cases, is important in this case, not only in answering the objection made to the defects in the petition of Dunn, but as being the case which finally settled the nature and extent of the jurisdiction of the County Court in the administration of the estates of the deceased persons, and the legal effect of its judgments as a court of record of general jurisdiction, to be the same, and entitled to the same presumptions in its favor to support its action, within the limits of its legal authority, as any other court of record of general jurisdiction; for as long as it could be said that the record must show that a petition had been filed by the proper party, according to the terms of the statute, to make an order of that court to

sell land valid when attacked in a collateral action, it might with equal propriety be held that some other prerequisite under the statute should appear of record as essential to the validity of the order, and that would impress the County Court with the character of being a court of special and limited jurisdiction, whose judgments are held to be valid, when collaterally attacked, only when the record in connection with them shows that all of the antecedent and prerequisite steps and proceedings have been taken, in conformity with the law, appropriate and necessary to the rendering of such judgments. This matter, about a petition appearing of record as a prerequisite fact to the validity of an order for the sale of land, was—or, at least, from the previous opinions delivered in previous decisions, appeared to be—the last barrier to the general jurisdiction of the County Court in probate matters, and it was swept away by this decision of Alexander *v.* Maverick, 18 Tex., 179, in which it is said, in the opinion, that though it had been assumed generally that a petition was necessary, " the question has not been necessarily involved in any case, and has not been authoritatively decided." It is useless, therefore, to refer us to those cases thus declared as not authoritative decisions in relation to the jurisdiction of the County Court in probate matters, which, however, is continually done, and for that reason particular attention should be given to this case whenever the jurisdiction of the County Court is in question. This decision has generally been followed in subsequent cases, upholding the general jurisdiction of the County Court, and shielding its orders and judgments within the limits of its jurisdiction from collateral attack, the same as those of any other court of general jurisdiction, on account of irregularities in its proceedings. (George *v.* Watson, 19 Tex., 369; Fishback *v.* Young, 19 Tex., 515; Withers *v.* Patterson, 27 Tex., 491; Giddings *v.* Steele, 28 Tex., 750; Green *v.* Rugely, 23 Tex., 539; Simmons *v.* Blanchard, 46 Tex., 266.) And equally, also, are presumptions indulged in favor of its action. In addition to the cases before

referred to in the earlier cases, reference may be had to Millican *v.* Millican, 24 Tex., 438; Sypert *v.* McCowen, 28 Tex., 635; Baker *v.* Coe, 20 Tex., 435. It will be found that the cases holding this view have given construction to all of the laws relating to probate matters from 1834 up to a period after the act of 1848, under which the orders were made in this case. As to the general law on orders and decrees of such courts, see Freeman on Judgments, 2d ed., section 319*a.*

If, then, this proceeding now under consideration comes under the ordinary jurisdiction of the County Courts over estates, (which will be considered hereafter,) the petition of Dunn was sufficient, though it may not ask a citation to the administrator, and may not state all that would be necessary to have been shown and established, to procure the order of the court in his favor; and it will be presumed that the administrator was notified, or had notice of the proceeding, although both orders are silent on that subject.

Justice Bell, in discussing the question of what may be presumed in favor of the action of County Courts, as exhibited in their orders or judgments, in the case of Withers *v.* Patterson, says: "The question presented in such cases is, how far is proof [which is wanting] to be supplied by presumption? The circumstances which would have authorized the court to act as it did act, [within the limits of its authority being implied,] are presumed to have existed." "But presumptions are indulged in the absence of proof, and not against proof." (27 Tex., 496.) The same justice says, in the case of Lawler *v.* White, 27 Tex., 253, that "the weight of authority seems to establish the proposition, that, even where the record is silent on the subject of notice, the judgment of a court of general jurisdiction will support itself, and cannot be collaterally impeached or called in question because of any want of alleged jurisdiction over the parties to the decree." He refers to 2 American Leading Cases, wherein is reviewed, as authorities on this point, the following cases: Foot *v.* Stevens, 17 Wend., 483; Horner *v.* Doe,

1 Ind., 130; Kempe's Lessee *v.* Kennedy, 5 Cranch, 173, 185; Moore *v.* Starks, 1 Ohio St., 369; 8 Id., 586; 17 Conn., 306; 13 Ill., 486; 15 Ill., 115; 34 Ill., 168. (See 2 Am. Lead. Cases, by H. & W., pp. 631 to 64, in the case of Mills *v.* Duryee.)

In Freeman on Judgments, section 132, on "SILENCE OF RECORD," he says (quoting from 35 Cal., 460): "It is of no consequence whether the jurisdiction of the court affirmatively appears or not on the judgment roll; for if it does not, it will be conclusively presumed." (Also, 30 Conn., 190; 56 Maine, 81; 41 Penn., 202; 7 Allen, 54.) This is also decided in Mitchell *v.* Meuley, 32 Tex., 460.

We may, therefore, presume that the administrator had notice, and gave his attention to this proceeding, as contemplated by the statute in such case, (Paschal's Dig., art. 1313,) although no citation appears in the record; and the order of 1849 does not recite an appearance by the administrator, inasmuch as there appears nothing in the record competent to rebut or disprove that presumption. The representation made afterwards to the court by the subsequent administrator, Smith, that said order had been made *ex parte*, in order to have it set aside, cannot have that effect, as it is deprived of any force by the subsequent order, in 1850, confirmatory of the previous one of 1849; and that of 1850 was certainly made after the administrator had notice, as evidenced by his opposition, and tends rather to strengthen the presumption that the former administrator did have notice, and that the proceeding was not *ex parte*, as represented by said Smith in his application to have it set aside.

There was no effort on the trial to show, by the records or otherwise, that when the order of 1849 was made there was no administration then pending upon the estate of John Trudo, as alleged in Smith's petition to set aside and annul said order; which fact, if true, would, of course, upon being shown, have rendered the order null and void for the want of jurisdiction of the court over the subject-matter of the

order, and over the parties who had the title to the property. But in the absence of any such proof, finding an order of court upon the records purporting to have been made in the estate of John Trudo, we must presume, from the order itself, certified to be taken from the records of said court, that the administration of his estate was then pending in said court, and that the order was made in the regular course of proceeding in said administration; nothing appearing of record or otherwise to the contrary.

It is contended, that, as to this proceeding, the jurisdiction of the court is special and limited, and for that reason the proceedings preceding the order, required by law to be taken to call into exercise the jurisdiction of the court in making the order, must appear in the record in connection with it to make it valid, even when collaterally attacked.

The case of Mitchell *v.* Runkle, 25 Tex. Supp., 132, is cited as an example, which was on a motion against the sheriff for not paying over money collected on an execution, wherein it was said that it was " a summary proceeding, and, being penal in its character, must be strictly construed," and that the record of the justice of the peace in which the judgment was rendered must show that a case was brought before the court of which it had jurisdiction, and notice to the defendant. In that case were cited as authority Hamilton *v.* Ward, 4 Tex., 360 ; Thatcher *v.* Powell, 6 Wheat., 128 ; 3 Humph., 313 ; 3 Yerger, 355 ; 8 Porter, 99. (See, also, 11 Wheat., 648.) Chief Justice Marshall says, in the case above cited in 6 Wheaton, that " In summary proceedings, where the court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction ought to appear, in order to show that its proceedings are *coram judice.*" Counsel has referred us to a long list of cases, both English and American, on this subject. Those authorities show the common rule to be, that in courts of minor grade, with inferior jurisdiction, where the proceed-

ings are not regularly conducted in the course of the common law, or where some extraordinary power is conferred upon a court of general jurisdiction to do some particular thing in a particular way, or under particular circumstances, being a departure from its ordinary course of proceeding, the record should show these things necessary to bring into exercise the power of the court. (Am. Lead. Cases, by H. & W., p. 633, referring to 7 Hill, 116; Folger *v*. Columbian Insurance Co., 99 Mass., 267; 33 N. H., 228; Thomas *v*. Robinson, 3 Wend., 267; 14 Wis., 375; Commonwealth *v*. Blood, 97 Mass., 538.)

All of our courts are limited in their jurisdiction with reference to the division of judicial powers between them, and they are special in reference to what may be adjudicated by each of them. They are not all thereby made courts of inferior jurisdiction, whose judgment are void unless the record shows the antecedent facts necessary to call their powers into exercise.

The District Court has its subjects for its action and its modes of proceeding, many of which are prescribed by statute. The County Court has its subjects for its action, relating to the estates of deceased persons, with its modes of action prescribed by law. Generally it is moved to action by an application in writing, and a contestation by others interested is allowed to be filed. It hears evidence and passes judgment, with the liberty of an appeal to the District Court, where a trial *de novo* is allowed, by which the parties may have a jury trial upon contested facts put in issue by their written statements. Regular minutes of its proceedings are kept, and its records are authenticated by the seal of the court, which are thereby recognized as authentic by all other courts of the State. Notwithstanding these attributes of a court of record of general jurisdiction, within the sphere of its powers as prescribed by the Constitution and laws, there are some expressions in opinions delivered in this court that give color to the position that it, in reference to this proceed-

ing, is a court of special and limited jurisdiction in the sense of an inferior court.

In regard to a suit for specific performance in said court, Chief Justice Hemphill said: " The jurisdiction of that court over the subject-matter is special, and can be exercised only where there is a bond, or the agreement to make title is in writing." (Peters *v.* Phillips, 19 Tex., 73.) That is, it could not act as a court of equity in enforcing verbal contracts; but, as then construed, it must be such a contract in writing for land as would comply with the statute of frauds, although that might not be a literal compliance with the statute prescribing this remedy in said court. (Paschal's Dig., art. 1313.)

In Jones *v.* Taylor, 7 Tex., 244, in regard to a similar suit in said court, he said that " the authority conferred on the Probate Court by the section (Paschal's Dig., 1313, same as 1162 Hart.) is special and limited, and must be strictly pursued; otherwise the acts and proceedings had thereon are nugatory, and confer no right." This is said in deciding a deed to be *prima fucie* void which was executed by an administrator, and recited an order of said court that " requires the administrator to execute titles to all lands for which the estate of the deceased stood bound," thereby substituting the judgment of the administrator for the adjudication by the court required by statute.

He says further, " the defect might have been aided had the power been conferred by a proper decree; and its production was incumbent on the vendor, had it in fact existed; but the deed as it now stands, and as it was offered in support of the action, destroys itself." He says, aided " by a proper decree," and not by a decree accompanied with record evidence *aliunde* that the jurisdiction of the court was called into exercise. It might as well have been said that a judgment entry on the records of the District Court was void, if it recited the fact that it was entered by the direction of the district judge to the clerk, to enter judgments upon all notes

that persons might present to him, and this judgment was so entered.

In Finch *v.* Edmonson, 9 Tex., 513, 514, the foregoing remark of Chief Justice Hemphill, about the authority of the court being special and limited, is quoted; and it is, in connection with it, added, that " the authority to order a sale is equally special and limited."

Thus it appears that this court placed the authority of the County Court in this proceeding for specific performance on the same footing as an order for the sale of land; and for that reason, among others, it was important in this case to exhibit fully what was the ultimate decision of this court on that subject in Alexander *v.* Maverick, 18 Tex., 179, and other subsequent cases.

The law of 1848, authorizing a specific performance and a partition, is found in two sections, 53 and 106, in the general act entitled " An act to regulate proceedings in the County Court pertaining to the estates of deceased persons." (Paschal's Dig., p. 300.)

There is nothing in the proceeding itself· that renders it exceptional, by being more difficult, or by requiring higher or more extensive powers than other proceedings in said court.

In answer to another objection to the validity of these two orders, in connection with the one now being considered, we have authority for the suit to embrace both a specific performance and a partition, as provided in these two sections of the act of 1848, both in the County Court and in the District Court, when brought, on a bond or written agreement for title to an undivided interest, against an administrator.

The case of Peters *v.* Phillips, 19 Tex., 70, was a suit against the administrator in the County Court, by one holding a written agreement for two sections of land, to be taken out of a league of land. It was held by the Supreme Court that the suit was maintainable under the act of 1848. There was no citation to the heirs. There was nothing said about the in-

congruity of the proceeding, embracing the remedies of specific performance and partition. The suit was brought in 1855. It was, on appeal, reversed and remanded, to enable the plaintiff to prove more fully the consideration, which had not been properly averred in his petition.

The case of Tumlinson *v.* York, 20 Tex., 694, was a similar suit, with a similar result.

The case of Ottenhouse *v.* Burleson was a suit in the District Court against an administrator, for specific performance of a verbal contract for the sale of land. Justice Lipscomb, in giving his opinion, that the suit was defective in not joining the heirs, which the majority of the court did not agree to, referred to the fifty-third section of the act of 1848 as authorizing a suit for specific performance on a bond against the administrator: *Held,* That the suit was well brought. (11 Tex., 87.)

In the case of Shannon *v.* Taylor, 16 Tex., 414, it was held, that a judgment of the District Court in favor of Taylor, against the administrator of an estate on a bond for an undivided half of a league of land, without joining the heirs, was valid, when collaterally attacked. (See, also, Baker *v.* Coe, 20 Tex., 435; Holt *v.* Clemmons, 3 Tex., 427, 428.)

In this discussion upon what must appear of record to sustain the validity of the orders of the County Court, it must be understood to apply to cases wherein their validity is called in question in a collateral action. In a direct proceeding, as on appeal or *certiorari*, the rule is different. (Flanagan *v.* Pierce, 27 Tex., 78; Peters *v.* Phillips and Tumlinson *v.* York, above quoted.)

As to the validity of the third order of the County Court embraced in the charge, which was made in 1870, upon a grant of administration upon the Trudo estate about twenty years after the last order shown in it, and that for the purpose of causing the administrator to execute a deed to the land in controversy, we think it unnecessary to decide definitely, further than to express an inclination of opinion, which is

expressed only that it may not be misconceived by the entire absence of expression, that too great a length of time had elapsed to justify the reopening of the administration without a better reason than any that is exhibited in the record, according to the numerous decisions of this court, which will be cited without comment.    (Fisk *v.* Norvel, 9 Tex., 13; Boyle *v.* Forbes, 9 Tex., 41; Hurt *v.* Horton, 12 Tex., 288; Easterling *v.* Blythe, 7 Tex., 210 ; Rose *v.* Newman, 26 Tex., 131; Withers *v.* Patterson, 27 Tex., 491; Wardrup *v.* Jones, 23 Tex., 489.)

We think there was no error in admitting the evidence excepted to, nor in the charge of the court; and therefore the judgment is affirmed.

AFFIRMED.