POOR AND OTHERS v. BOYCE.

See this case for circumstances which showed an abandonment of a location and survey.

A certified copy of field notes, taken and certified by the District Surveyor from the records of his office, is competent evidence to prove a survey. (There was a certificate by the Governor of the official capacity of the person signing as District Surveyor.)

Where the land, situated in Red River, was claimed by virtue of a location and survey made in April, 1838, and the certificate under which they purported to have been made, was indorsed "File 856. Bexar county. 1st class. Headright certificate Collin C. McRae. 1 Lea & Lab.," which indorsement was proved by the opposite party to be in the hand-writing of "Stephen Crosby, of the General Land Office," and read in evidence without objection, it was said that unexplained, the indorsement tended to prove an abandonment of the location in Red River and a survey in Bexar and return thereof to the General Land Office.

An administrator has the same authority to lift a location, which he had to make it; but if he combine with others to defraud the heirs, or abuse the trust to their prejudice in removing the location, the act of removal may be annulled and the original location re-instated, provided innocent third persons be not injured thereby.

Before the introduction of the Common Law, it was not essential for the assent of the husband to appear by the deed by which the wife disposed of her separate property; and the assent of the husband in due form will be presumed where it is evident he must have been aware of the sale, and made no objection for several (fourteen) years thereafter.

Where an administratrix petitioned the Probate Court in 1840, for an order of sale of certain real estate, on the ground alone that there would be a great deal of litigation and expense necessary in order to recover it for the estate, and the order was granted accordingly, it was held that the petition gave the Court jurisdiction, and that the sale could not be attacked collaterally.

Where the fiduciary character of one acting as administrator is recognized by the Probate Court, as between the heirs and creditors, and those dealing with the acting administrator, his authority cannot be called in question collaterally for the purpose of invalidating his lawful acts, done in the due course of administra-

Poor v. Boyce.

tion. And therefore, if he alienates property of the estate by order of the Probate Court and in the manner prescribed by law, though his appointment be not regular and legal, the title of the *bona fide* purchaser will nevertheless be good and indefeasible.

It would be a dangerous doctrine to hold that the omission of the administrator to obtain an extension of time, or of the Court to make the entry of such order upon its minutes, would have the effect to invalidate acts done by the acting administrator in the due course of administration, to the extent of defeating the title of a *bona fide* purchaser.

Error from Bowie. Action of trespass to try title, commenced October 14th, 1852, by the plaintiffs in error, who were the widow and minor heirs of Collin C. McRea, against the defendant in error, to recover a league of land at the mouth of Mill Creek in Bowie county.

The plaintiffs proved Collin C. McRea came to Texas in 1833, and brought his family in 1834 and settled at the mouth of Mill Creek, then in the county of Red River, and made considerable improvements and cleared and cultivated about thirty acres of land; that he died at that place in the year 1835; that his family continued to reside there for about three years afterwards; that McRea's widow, one of the plaintiffs, married Ira S. Poor in the spring of 1837; that on the 13th of February, 1838, a certificate was issued by the board of Land Commissioners of Red River county, No. 342, to the heirs of Collin C. McRea on the application of Eliza Poor by her attorney in fact, "she having proved to the satisfaction "of said board that she was the legal representative of said heirs;" that on the 19th April of same year, a survey was regularly made by a Deputy Surveyor, by virtue of said certificate, of the land described in the petition and within twenty days thereafter was returned to the County Surveyor and by him examined and approved and certified accordingly; the witness who proved the survey, was the Deputy who made it; he was enabled to give the field notes from a memorandum kept by him and from memory; John H. Dyer was living upon the place when he made the survey, and said it was all right; the certificate was placed in his hands by Ira Poor, the husband of

Eliza Poor, and was returned by him to the office of the County Surveyor, with the field notes; the Surveyor of Red River district testified that he had made diligent search in his office and could not find any trace of the field notes or certificate; the plaintiffs gave the certificate in evidence, also a certificate in due form that it had been recommended by the travelling board.

The defendant claimed only one thousand acres, including the improvements aforesaid, and admitted he was in possession of it. He offered in evidence a certified copy of the bond of " Eliza Poor, the wife of Ira S. Poor, administratrix of the estate of Collin C. McRea," in the sum of $25,000, dated the —— day of November, 1838, to John H. Dyer, conditioned to make to the said Dyer, " as soon as the titles " are issued by the Government of the Republic of Texas to " emigrants, for headrights, upon the reasonable request and " at the proper costs and charges of the said John H.," an absolute and indefeasible title to " all that undivided half of " all that certain messuage and tract of land upon which the " said John H. Dyer now resides, lying and situated at and " below the mouth of Mill Creek on Red River, in the county " aforesaid," &c., " containing one thousand acres, with the town site of the town of Berlin;" signed " Eliza Poor" and sealed in presence of two witnesses, and acknowledged in the present form for unmarried women, before J. G. Wright, Clerk, attested by his seal of office; (but what seal did not appear from the copy although it appeared from other papers in the case that Wright was Clerk of the County Court at that time; in connection with the offer of the copy of the bond in evidence, which had been filed and called to the notice of the plaintiffs three days before the trial, the defendant filed an affidavit that the original bond was not in his possession or control, and that he could not procure it. To the introduction of which evidence, the plaintiffs objected that the bond had not been legally recorded; and that it appeared from the bond itself, that it was executed by a married woman, without being

joined by her husband.  The objections were overruled and the bond was read.

The defendant then offered in evidence a certified copy of the petition of Eliza Poor, as administratrix of the estate of Collin C. McRea, to the Probate Court of Red River county, at October Term, 1840, in which she represented " that there " has come to the hands of said administratrix a certain im- " provement, or part of it, situated and lying at the mouth of " Mill Creek on Red River in said county, rightfully belong- " ing to the estate of said McRea, about which there will be " a great deal of litigation and expense to the petitioner to ob- " tain the land ;" and she therefore prayed an order of sale of the land " agreeably to the statute made and provided in such case ;" the order made thereon, for the sale of " the improvement " on a credit of twelve months ; the final ac- count of Eliza Poor as administratrix of Collin C. McRea, filed September 26th, 1842, in which she charged herself with " sale of improvement at Berlin under order, February 1st, 1841, $2,500," which account was not approved ; and the re- port of Auditors at November Term, 1842, who had been ap- pointed to audit said account, in which report they found the amount of $5,204 12, in the hands of the said administratrix, which report was at said Term, confirmed : To the introduc- tion of which evidence, the plaintiffs objected, that it had not been shown that said Eliza was administratrix of Collin C. McRea ; that the petition itself showed the Court had no au- thority to order the sale ; and that there was no return of sale. The objections were overruled and the evidence read.

The defendant then offered in evidence a copy of survey from the District Surveyor's office of Bexar district, for one league and labor, which purported to have been " made for " Eliza Poor, legal representative of Collin C. McRea, it being " the land to which he is entitled by virtue of a certificate " No. — issued by the board of Land Commissioners for the " county of Red River."  It purported to have been made on the 10th of November, 1838, by John C. Hays, Deputy Sur-

veyor, Bexar district, and to have been examined, approved and recorded by John C. Hays, District Surveyor, of Bexar district. The copy was certified by the District Surveyor of Bexar district, to be a true copy of the original, as taken from the records of his office; and there was a certificate by the Governor, that S. McDonald, who certified the copy, was at its date the District Surveyor of Bexar district. To the introduction of which evidence, the plaintiffs objected, that the field notes did not describe any certificate; that the same person signed as deputy and principal Surveyor and that the certificate of the Surveyor had no date; and that it did not purport to be a copy of the original field notes, but a copy of the copy on record in the Surveyor's office; which objections were overruled and the evidence read.

The defendant then proved certain indorsements on the land certificate of McRea's heirs, and on the Clerk's certificate of its genuineness, to be in the hand-writing of Stephen Crosby, of the General Land Office, and read the same as follows: "File 856. Bexar Co. 1st Class. Headright certificate Collin C. McRea. 1 Lea. and Lab." On the Clerk's certificate, "File 856. Bexar Co. 1st class. Certificate of Clerk of Red River county."

The defendant then read a patent to J. H. Dyer, No. 679, Vol. 1, dated 19th of September, 1845, for 640 acres of the land in controversy, including the mouth of Mill Creek.

It appeared from the testimony, that when McRea visited Texas in 1833, he purchased the improvement right at the mouth of Mill Creek from one Burkham, giving him two promissory notes, one for $400 and the other for $200; and that about one month before McRea returned, J. H. Dyer came and paid the $400 note, saying that he paid the same for McRea.

" The plaintiff read in rebuttal, a copy from the records of the County Court of Red River county," of proceedings dated 13th February, 1838, by which Eliza Poor was appointed administratrix of Collin C. McRea; Ira S. Poor and J. H. Dyer,

sureties; also of proceedings at July Term, same year, reciting that Ira S. Poor had that day exhibited his petition showing the personal property of Collin C. McRea was insufficient to pay his debts, and praying that the administrator be authorized to sell all the lots in a town laid off at the mouth of Mill Creek, and the order accordingly; also proceedings at April Term, 1839, reciting that on motion of Ira S. Poor, administrator it was ordered that he have time prolonged until the next Term, to make settlement with the Court, in the estate of Collin C. McRea, deceased.

Verdict and judgment for defendant. Motion for new trial overruled.

*Young & Morgan*, for plaintiffs in error.

*Morrill & Dickson*, for defendant in error.

WHEELER, J. There are two views of this case presented by the record and in argument, either of which, it is conceived must be decisive of the question of title adversely to the plaintiffs.

In the first place, the evidence, we think, very clearly shows an abandonment by the plaintiffs of their first location and survey, by a subsequent removal and location of their certificate in Bexar county. This subsequent location and survey, may account for the fact that the field notes of the first survey were not recorded in the office of the Surveyor of Red River county. The certificate was withdrawn and removed to Bexar and the field notes doubtless destroyed. And this is the natural and probable, and we do not doubt, the true reason for the fact that no trace of the survey is to be found among the records of Red River county. And when the fact may be thus satisfactorily accounted for, and is chargeable to the act of the party, and there is nothing in the case to warrant the supposition that any fault is to be imputed to the officers, that conclusion, upon the most obvious principles, must be

adopted, which will not require us to suppose that an officer, entrusted with an important duty, has been guilty of a culpable omission or disregard of duty. Such a supposition is not to be gratuitously adopted. Nor is there any foundation for its adoption in the facts of this case.

But it is objected that the copy of the field notes of the survey, from Bexar, was improperly admitted, and ought not to be regarded ; because, the answer alleges that the original field notes were in the General Land Office. This was not the objection urged in the Court below. The ground of objection there assigned was that the certified copy offered in evidence did not " purport to be a copy of the original field notes ; but a copy of the copy on record in the Surveyor's office." This objection as to what the copy purported to be, was not well. founded in fact. The officer certified that it was " a true copy of the original, as taken from the records of his office."

But it would be, to say the least, quite technical to exclude a copy from the records of the county, to make place for a copy from the General Land Office. Where it is not to be supposed that the party could obtain the original, and is not required, as in this case he certainly was not, to account for its non-production, the copy assumes the place of primary evidence, and it would seem to be quite immaterial whether it be taken from the records of one office or the other.

But if the evidence in question was improperly admitted, there was other evidence in the case sufficient to establish the fact that the certificate had been located in Bexar. If it were not so, how is it that it bore evidence of having been returned to the general Land Office as being surveyed in that county ? The indorsements made on the certificate by the Commissioner of the Land Office, admit of no other possible inference ; and unexplained must be regarded as proof of the fact.

But apart from the positive evidence of the fact, the other evidence in the case was amply sufficient to authorize the presumption that the first location had been abandoned. The fact that no steps whatever were taken to perfect the title for

a period of more than fourteen years from the time of the alleged survey; that during all that time no trace appears to have existed of either certificate or survey in the Surveyor's office of Red River county; and that though the survey is alleged to have been made in April, 1838, and there was a continued adverse possession, the pretended right of the plaintiffs is not asserted until the commencement of this suit in October, 1852; these facts admit of no other reasonable supposition, and cannot be rationally accounted for upon any other hypothesis, than that the party, having control of the certificate for the plaintiffs, if in truth it had been located, surveyed and returned to the Surveyor's office as alleged, had withdrawn it from the office for the purpose of locating it elsewhere and had destroyed the field notes. And the present claim of title in the plaintiffs, under all the circumstances, has, it is to be regretted, too much the appearance of an afterthought consequent upon the discovery or belief that the second location was less advantageous than the first, to be regarded with favor. The rights of third persons have intervened, and the facts of this case, it must be admitted, afford much stronger evidence of abandonment of the location, than the facts which were treated by the Court as affording presumptive evidence to that effect in the case of Lewis v. Durst. (1 Tex. R. 415–16.)

To the argument that the survey vested title in the heirs, which could not be divested by the act of the administratrix, it is sufficient to say that the latter had the same right to raise the location for the purpose of making one elsewhere, which she may have deemed more advantageous to herself and the heirs, that she had to apply for and obtain the certificate and make the location in the first instance; and her own interest in the matter of the location was a sufficient guaranty against an abuse of the trust. The interest of the heirs required that she should have the same authority and discretion to control the incipient steps in procuring the title, which any other party might lawfully exercise in obtaining a title to land; being re-

sponsible for a judicious and faithful discharge of the trust. If it were shown that she had combined with others to defraud the heirs, or had abused the trust to their prejudice in removing the location, her acts might be annulled and the original location reinstated, provided innocent third persons were not prejudiced thereby. But there is no pretence of any such combination, or abuse of authority in this instance; and it is very evident that innocent third persons would suffer by permitting the location to be reinstated.

There is another ground on which it is perfectly clear the plaintiffs cannot recover on the title set up in this case. In 1839, the plaintiff, describing herself as administratrix, but signing her own proper name, made her bond to make title to the undivided half of the land; and in 1840, as administratrix, she petitioned the Probate Court, obtained an order to sell, and did sell the interest of the estate in the premises in question, to the party then in possession, under whom the defendant claims.

It is not questioned that this plaintiff could by law dispose of her interest in the land in 1839. But it is objected that there is no evidence that it was done with the assent of her then husband. It was not necessary that his assent should appear by the instrument, (Harvey v. Hill, 7 Tex. R. 591,) and we think, with the learned Judge who presided at the trial, that the silent acquiescence of the husband up to the time of the commencement of this suit, when it is evident he must have been aware of the sale, is sufficient to warrant the presumption, after so great a lapse of time, that he gave his assent in due form, to his wife's disposition of her interest in the land, and to preclude him from averring the contrary. In support of the equitable and just title of the purchaser, such assent, we think, may and ought to be presumed.

It is objected that the copy of the bond was not admissible in evidence, because the original was not acknowledged before the proper officer for recording. But this objection is not supported by the record. The instrument was acknowledged be-

fore a person who signs as Clerk, attested by his seal of office, in November, 1838. And as the Clerk of the County Court was the only Clerk at that time authorized by law to take such acknowledgments, the presumption must be that the person signing was the Clerk of that Court. The recording is, therefore, now to be regarded as legal. (Hart. Dig. Art. 2776.)

The subsequent sale by order of the Probate Court divested the title of the heirs. The petition of the administratrix gave the Court jurisdiction. (Finch v. Edmonson, 9 Tex. R. 504.) All other questions, in the absence of fraud, are concluded by the judgment. In the case of Lynch v. Baxter, (4 Tex. R. 531,) it was determined that it is not essential to the title of the purchaser of property at an administrator's sale, that the record should show a necessity for the sale. The order of sale is conclusive of that question until it be set aside by a proceeding having that object directly in view, and the purchaser, in the absence of fraud, will be protected. (See Grignon v. Astor, 2 Howard, R. 319, 338.)

It is objected that the term of administration had expired previous to the order of sale, and that it does not appear that the time had been extended by order of the Probate Court. Nor is it material to the title of the purchaser, or the validity of the sale, that it should appear. The plaintiff continued to act in the character of administratrix; and her right so to act was recognized by the Probate Court. The Court expressly recognized the sale made by her in this instance. This was sufficient to charge her as administratrix at the date of the order and sale. (Townsend v. Munger, 9 Tex. R. 300.) And if it were necessary to render her acts, legally done in that character, valid and binding on the estate, an extension of the term of administration would be presumed. Where the fiduciary character of one acting as administrator is recognized by the Probate Court, as between the heirs and those dealing with the acting administrator, his authority cannot be drawn in question for the purpose of invalidating his lawful acts, done

29

in the due course of administration. As respects the rights which third persons may fairly acquire by reason of such acts, he will be deemed to have had competent authority; and his acts will bind those claiming the estate as creditors, distributees or heirs. For third persons dealing with one acting as administrator with the sanction of a Court having jurisdiction to confer the authority, have a right to regard him as acting by virtue of a legal and valid appointment; and, it is said they " are not bound to seek further than him who acts as executor," provided he " is proved to have been acting at the time in the character of executor." (1 Williams on Exrs. 158, 159.) Surely they cannot be required to look further than to see that he is thus acting with the sanction of a Court of competent jurisdiction to confer and revoke the power, and supervise his acts. And therefore if he alienates property of the estate by order of the Probate Court and in the manner prescribed by law, though his appointment was not regular and legal, the title of the *bona fide* purchaser will nevertheless be good and indefeasible. (Ib., & see Hart v. Horton, *supra*.)

So, it is said, " It must be observed that whether the pro-" bate or letters of administration be void or voidable, if the " grant be by a Court of competent jurisdiction, a *bona fide* " payment to the executor or administrator, of a debt due the " estate, will be a legal discharge to a debtor." (Williams on Exrs. 404.)

It would be a dangerous doctrine to hold that the omission of the administrator to obtain an extension of time, or of the Court to make the entry of such order upon its minutes, would have the effect to invalidate acts done by the acting administrator in the due course of administration, to the extent of defeating the title of a *bona fide* purchaser. If the mere errors, irregularities and omissions in such matters, by administrators and Probate Courts, should have such effect, no one would dare to purchase; for no purchaser would be secure in his title, and the consequence would be that the property of estates subjected to sale, would be sacrificed. There is no decision

Poor  v.  Boyce.

or opinion of this Court which would sanction a doctrine fraught with such consequences. There are no sounder or more salutary adjudications than those which protect the titles fairly acquired by purchase at those sales. In the words of Mr. Justice Baldwin in the case of Grignon's Lessee v. Astor *et al,* "They are founded on the oldest and most sacred prin-" ciples of the Common Law. Time has consecrated them. " * * * * * They are rules of property, on which the " repose of the community depends. Titles acquired under " the proceedings of Courts of competent jurisdiction must be " deemed inviolable in collateral actions, or none can know " what is his own ; and there are no judicial sales around which " greater sanctity ought to be placed, than those made of the " estates of decedents, by order of those Courts to whom the " laws of the States confide full jurisdiction over the subjects." (2 Howard, R. 243.)

There are no principles.or rules of law which can sanction such injustice and wrong as would result, were the plaintiffs allowed to dispossess the defendant by the title on which they seek to recover in this case.

In the view we have taken of the plaintiff's title, it does not become necessary to revise in detail the several rulings of the Court reserved by bills of exceptions. We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.