WM. R. BAKER ET ALS. v. RECARDO DE ZAVALLA ET ALS.

(Case No. 3973.)

1. DEED — ADMINISTRATOR'S SALE.— Lorenzo De Zavalla died in Harrisburg county, November 16, 1836. His son took out letters of administration on his estate January 30, 1838, and returned an inventory of property valued at $15,000. Administration was kept open from year to year, and in 1841 partition of the estate was ordered. At the July term, 1841, of the probate court, the commissioners appointed to make partition reported a division of the land among the heirs, except one labor, which they represented indivisible. It was ordered sold; report of sale was made September 28, 1841, and approved. January 2, 1843, Henry M. Fock, who had married Zavalla's widow, applied for letters of administration de bonis non on Zavalla's estate, alleging that the administrator had " departed from the republic, and has been absent from the republic for more than twelve months, and that the estate is suffering from neglect." February 27, 1843, after due publication, the former letters of administration were revoked, and Henry M. Fock was

appointed administrator *de bonis non* with bond fixed at $17,000. Fock continued to act as administrator until his death in 1850. March 12, 1850, W. R. Baker filed a petition in the probate court showing "that Lorenzo De Zavalla died several years since, a citizen of this county; that his estate has been administered and the property sold, except the headright of the deceased, and he is informed that all debts have been paid, except one due your petitioner and officers of court for expenses of administration; . . . that the administrator of said estate, H. M. Fock, has lately died, leaving your petitioner's debt unpaid; that it is the wish of the widow of said deceased that said debt should be paid, and that for the purpose an administrator should be appointed." The petition was sworn to by Baker, clerk, before Augustus C. Daws, his deputy, March 13, 1850. March 15, 1850, Baker gave notice of his application, and at the March term, 1850, of the probate court, letters issued to Daws. April 1, 1850, Daws returned an inventory, including only the league and labor headright certificate granted to L. De Zavalla by the board of land commissioners of Harrisburg county, appraised at $250. Inventory approved. Daws gave $500 bond, with Baker and T. M. Bagley sureties, which was approved April 29, 1850. April 30, 1850, Daws made application for order of sale to sell the certificate, for cause showing that there was "due and owing the officers of Harris county court, by the estate of L. De Zavalla, under former administrators, upwards of $100 for costs of court, and that there are and will be costs due in addition thereto by virtue of the administration of petitioner; that there are no other debts to his knowledge, and that the headright for one league and labor of land of the deceased is all the property belonging to the estate, out of which the aforesaid debts can be made. He therefore prays that he be authorized to sell said land certificate, together with all the right of location which may have been acquired, for cash." Sworn to by Daws before W. R. Baker, clerk, April 29, 1850. April term, 1850, ordered that Daws proceed to sell on first Tuesday in June, 1850, at the court-house door in Harris county, for cash, to the highest bidder, after giving twenty days' notice, "one league and labor land certificate, granted to Lorenzo Zavalla by the board of land commissioners of Harrisburg county, together with all the right of location which may have been acquired by virtue thereof." June 4, 1850, return of sale by Daws, sworn to before W. R. Baker, clerk; sale to Baker for $195 cash. June term, 1850, sale approved, and deed to purchaser ordered for the certificate, "together with the land upon which the same may be situated." Daws executed deed to Baker in accordance with the order approving the sale. In a suit by the heirs of Zavalla for the land covered by the certificate, *held:*

(1) Baker's title to the land depends upon the validity of the grant of administration under which the sale was made at which

he bought, and the validity of the administration depends upon the facts as they existed at the time the letters were granted. Withers v. Patterson, 27 Tex., 501.

(2) Given an administration legal in its inception, it becomes immaterial to its validity whether it was wisely executed.

(3) That property was lost or squandered in the course of the administration is a ground for complaint against the administrator in the probate court, or in a direct proceeding for the revision of such errors.

(4) That an administration was not formally extended did not effect its validity. Poor v. Boyce, 12 Tex., 447.

(5) Nor that so long a time elapsed between the death of the intestate and the grant of letters de bonis non. Howard v. Bennett, 13 Tex., 314.

(6) Nor that there was an interval of several years between entries or evidence of acts as such. Burdett v. Silsbee, 15 Tex., 610–616.

(7) Nor that an estate was consumed by costs and expenses to the loss or want of benefit to the heirs. Kleinecke v. Woodward, 42 Tex., 311.

(8) Nor was the sale under which Baker purchased ineffectual to pass the location with the certificate. Simpson v. Chapman, 45 Tex., 566.

(9) That limitation would run against an effort to avoid the sale for fraud, if fraudulent acts can be shown or appear. Pearson v. Burditt, 26 Tex., 172.

(10) That Daws' administration, under which Baker purchased, was valid; that the objections to the proceedings antecedent to, and in the sale and its confirmation, were but irregularities, only available in a direct attack, and not to be avoided in a collateral proceeding.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

Recardo De Zavalla, Emily Hand, Augustine Zavalla, Catharine A. Hutchison, W. E. Hutchison, Lorenzo De Zavalla, Jr., Gertrude Lenoria, Lorenzo Lenorio and Ignacio Lenorio, as heirs of Lorenzo De Zavalla, sued in trespass to try title, petition being in the usual form, Wm. R. Baker and others, in the district court of Lamar county, for twenty labors of land in said county, patented to the heirs of said Lorenzo De Zavalla. Petition was filed April 28, 1877.

October 3, 1877, defendants answered not guilty. Record and Edwards pleaded, in addition, that in 1876 they had

each bought a part of said tract — bought in good faith, without notice of plaintiffs' claim; suggested valuable improvements, etc.

By amended answer, defendants pleaded that the claim of plaintiffs was a stale demand, based upon rights accruing more than ten years before the suit was filed; that defendant Baker, and those of defendants claiming under him, have owned and held adversely, paying taxes thereon, ever since the year 1850.

On the trial it was admitted that the plaintiffs were the widow and heirs of Lorenzo De Zavalla, deceased. Patent was received of date October 12, 1862, to the heirs of L. De Zavalla, for the land described in the petition.

It was admitted that defendants, Record and Edwards, were in actual possession of portions of the land, and that the other defendants are claiming the balance of the tract.

Upon this the plaintiffs rested.

The defendants read transcript of proceedings had in the probate court of Harris county, in the administration of L. De Zavalla, showing—

Petition of Lorenzo De Zavalla for letters of administration, of date January 17, 1838, alleging that his father, L. De Zavalla, died November 16, 1836, in the county of Harrisburg, intestate, leaving property and unfinished business, etc.

January 30, 1838, letters were granted, fixing the bond at $25,000.

February 1, 1838, the administrator, with appraisers Geo. M. Patrick and David G. Burnett, returned an inventory, reporting lands, the headright certificate for league and labor, personal property, claims against M. B. Lorrior and sundry other individuals; claims against the government for military services as delegate to the consultation, and to the convention at Washington, etc. Total valuation of estate, $15,000.

February, 1839, the administrator filed his account current, showing his acts to that date; reporting collection of $3,332.50, and disbursements to the amount of $487.11, in-

cluding $19 paid "bill of the clerk of the probate court;"
and "February 6, fees on one order of survey for one league
and labor of land for estate (B), $5;" and "October 24,
1838, paid M. Trimble, county surveyor of Bexar, in ad-
vance, for locating and surveying a league and labor of land
for estate (I), $70."

On request of the administrator his administration was
extended a further time of twelve months and the account
was allowed.

April 27, 1840, the administrator filed his second annual
exhibit, showing items of expense and moneys collected:

Reporting collections...................................... $4,992 50
Disbursements.............................................   2,746 49
                                                           ──────────
    Balance carried to new account....................... $2,246 01

This account was also approved and time of administra-
tion extended to the January term, 1841.

At the March term, 1841, the administrator petitioned
the court for the sale of the personal property remaining
in his hands, as incapable of partition, and the same was
ordered " on the terms and conditions prescribed by law."

To the April term, 1841, Henry M. Fock and wife, Emily
(the latter "late widow of L. De Zavalla"), filed a petition
for the partition of said estate, representing that all the
debts of said estate were paid and that one-half of the
property now vested in her.  She asked citation to other
heirs and the administrator, and the administrator accepted
service of the petition.  At the same term (April, 1841) the
administrator also filed a petition for partition of the lands
of the estate.

On these petitions the court ordered a partition of the
lands of the estate, and appointed commissioners to divide
them; the parties taking in the partition being Mrs. Emily
Fock, widow, and Mrs. Manuella Zonerio, Emily, Lorenzo,
Augustine and Recardo De Zavalla, children of the deceased,
of whom Augustine, Emily and Recardo were minors.

On May 31, 1841, time was extended for the report of
the commissioners of partition.

At the July term, 1841, the commissioners reported division of the lands, except one labor, which they represented indivisible. The court at that time approved the report of division, and ordered the labor, reported indivisible, sold "upon a credit of twelve months, as prescribed by the statute."

At the September term, 1841, the administrator reported the sale of the personal property and the labor of land as follows:

"ACCOUNT SALES.

"SEPTEMBER TERM, 1841.

"Report of sales of property, real and personal, belonging to the estate of L. De Zavalla, deceased. Sold by order of the honorable the probate court of Harris county, republic of Texas:

| | |
|---|---:|
| Mrs. M. H. Fock, thirteen head cattle, $6.50................ | $84 50 |
| Mrs. M. H. Fock, one M. bedstead and bedding............. | 75 00 |
| Mrs. M. H. Fock, one gray horse........................... | 22 00 |
| | $181 50 |
| Mr. H. Fock, one labor of land at the junction of Buffalo Bayou and old San Jacinto river, he and his wife's right being interested to the extent of one moiety, and the same not capable of division, for the whole labor.............. | 2,832 00 |
| Robert Dunman, one negro slave named Tom.............. | 980 00 |
| McLemore, one-half dozen knives and forks... .......... | 4 00 |
| Total ............................................. | $3,997 50 |

"HOUSTON, September 28, 1841."

This was sworn to, and at September term, 1841, was examined, approved and ordered to be recorded.

August term, 1842, continued. January 2, 1843, petition was filed of Henry M. Fock and his wife Emily (widow of L. De Zavalla), for letters de bonis non, alleging that Lorenzo De Zavalla, the administrator, had "departed from the republic and has been absent from the republic for more than twelve months, and that the estate is suffering from neglect," asking that letters to L. De Zavalla be revoked and full "authority to settle said succession."

The court ordered publication of notice to the former administrator of the application for his removal. Notice was

published for twenty days in the Telegraph, a newspaper in Houston, February 27, 1843. It was "ordered that the letters issued to L. De Zavalla be revoked, and that letters issue to Henry M. Fock, upon his entering into bond with approved security in the sum of $17,000, or in double the amount of the inventory according to the terms of the law, upon payment of all costs."

October 17, 1843, petition of DeW. C. Harris, county clerk, filed, representing that "the estate of L. De Zavalla has been opened for several years, and the fees of office balance remains unpaid; that L. De Zavalla has been discharged, and H. M. Fock appointed in his place," etc., asking a rule, etc.

Same day, 17th October, 1843, indorsed: "Let a writ of citation issue returnable to October term."

Citation was issued and returned indorsed "with a receipt from D. W. Clinton Harris for a settlement of all his costs."

October term, 1843. "Continued at the cost of H. M. Fock, the defendant."

January term, 1844. "Continued by order of court and consent of parties to next term."

February 26, 1844. Fock filed his bond as administrator *de bonis non* in sum of $2,000. Approved.

February term, 1844. It was further "ordered that Fock file an inventory duly appraised by J. T. Harrell, Silas Herndon and Joseph Oates under oath, and make due return at the next term." It does not appear that an inventory was ever filed by Fock.

March term, 1844. "Continued by order of court to next term upon motion of the administrator, and he, the administrator, having heretofore taken the usual oath of office as such, it is ordered that H. M. Fock, the administrator, have until next term to file an inventory, and that letters of administration may issue forthwith the better to enable him to give a correct inventory."

April term, 1844. Continued by order of court to next term of court.

May term, 1844.  Same order.

July term, 1844.  Same order.

August term, 1844.  "By consent of parties interested, this estate is dismissed from the docket until called up by parties in interest."

January 21, 1848.  The petition of Henry M. Fock, administrator, represented "that the rents, issues and profits of said estate are insufficient for the support of the family and education of the minor children of said deceased," praying "the sale of the headright certificate of said deceased for one league and labor of land issued to the heirs of deceased by the board of land commissioners of Harrisburg county."

March term, 1848.  "Ordered by the court that the administrator sell the headright certificate of deceased in terms of the law for cash, with appraisement, and due return make of such sale on or before the next term."

May term, 1848.  Continued for return account sales.

July term, 1848.  Same order.

August term, 1848.  Same order, and "citation ordered to Galveston county."

September term, 1848.  Continued for account sales.

November term, 1848.  Continued for return account sales.

December term, 1848.  Continued for account sales.

January term, 1849.  "Ordered that the clerk issue a summons to H. M. Fock, administrator, requiring him to file an account sales of the property of said estate at the next term," etc.

Citation issued 3d February, to Harris county, returned not executed for want of time.

Also, January term, 1849.  "It appearing to the court on examination of the records of the county court in this matter of this estate, that the costs accruing to the officers of court are due and unpaid; and on motion of Wm. F. Weeks, formerly probate judge for Harris county, by his counsel: It is considered, ordered, adjudged and decreed that the administrator of this estate be cited to appear on or before the February term, 1849, of this court, and show cause, if any, why

judgment should not be rendered against him and his sureties on his bond for the full amount of all costs due to the officers of court in the matter of the succession, and execution awarded therefor." Citation ordered returnable to next term.

Citation issued February 6, 1849; returned February 26, 1849, not executed for want of time.

February term, 1849. *Alias* summons ordered requiring Fock to file an account sales of property, etc.

*Alias* issued, and returned served March 22, 1849.

March term, 1849. Continued.

April term, 1849. Continued.

October term, 1849. " On motion, it is ordered by the court that the case be placed upon the docket, and further ordered that the business of the estate be continued until next term."

November term, 1849. Continued.

January term, 1850. Continued.

February term, 1850. Continued.

March 12, 1850, Wm. R. Baker filed a petition showing:

",That Lorenzo De Zavalla died several years since, a citizen of this county; that his estate has been administered, all the property sold except the headright of the deceased; and he is informed that all debts have been paid except one due your petitioner and officers of court for expenses of administration; . . . that the administrator of said estate, H. M. Fock, has lately died, leaving your petitioner's debt unpaid; that it is the wish of the widow of said deceased that said debt should be paid, and that for the purpose an administrator should be appointed; asking that Augustus C. Daws or any other suitable person be appointed administrator of said estate for the purpose aforesaid."

This was sworn to by Baker, clerk, before his deputy, August C. Daws, 13th March, 1850.

March 15th notice was given by Baker of his application.

March term, 1850, letters ordered to Daws; appraisers appointed.

April 1, 1850, Daws returned an inventory, including only the league and labor land certificate of headright, granted to L. De Zavalla by the board of land commissioners of Harrisburg county, appraised at $250. Inventory approved. Bond filed by Daws in sum of $500, with Baker and T. M. Bagby sureties, approved 29th April, 1850.

April 30, 1850, Daws made application for sale of the headright certificate; for cause showing that there is "due and owing to the officers of Harris county court by the estate of L. De Zavalla, under former administrators, upwards of $100 for costs of court; that there are and will be costs due in addition thereto by virtue of the administration of petitioner; that there are no other debts to his knowledge, and that the headright for one league and labor of land of the deceased is all the property belonging to the estate out of which the aforesaid debts can be made. He therefore prays that he be authorized to sell the said land certificate, together with all right of location which may have been acquired, for cash," etc.

Sworn to by Daws before W. R. Baker, clerk, April 29, 1850.

April term, 1850. Ordered that Dows proceed to sell, on the first Tuesday of June, 1850, at the court-house door, in Harris county, for cash, to the highest bidder, after giving twenty days' notice, "one league and labor land certificate, granted to Lorenzo De Zavalla by the board of land commissioners of Harrisburg county, together with all the right of location which may have been acquired by virtue thereof," etc.

June 4, 1850. Return of sale by Daws, sworn to before Baker, clerk. Sale to Baker for $195, for cash.

June term, 1850. Sale approved, deed to purchaser ordered for the certificate, "together with the land upon which the same may be located."

July term, 1850. Continued.

August term Daws filed final account and resignation account as follows:

ESTATE OF L. DE ZAVALLA, deceased, with A. C. DAWS, administrator.

*Dr.*

| | | |
|---|---|---|
| To amount court fees paid as clerk's receipts.................. | $178 | 09 |
| To commission on $195. Receiving and paying out ten per cent....................................................... | $19 | 50 |
| | $197 | 50 |

*Cr.*

| | | |
|---|---|---|
| By amount received for cash for league and labor of land granted to De Zavalla and sold by me..................... | $195 | 00 |
| Due A. C. Daws, administrator......................... | 2 | 50 |

August term, 1850, Daws' final account was approved and his resignation accepted, his bond as administrator canceled and the estate closed.

It was admitted that Daws executed to defendant Baker a deed for the said land certificate by virtue of which the land in controversy had been located, as ordered, in 1852.

Admitted that November 8, 1873, Baker sold one hundred and fifteen acres to E. L. Dohoney.

In 1875, sold, and June 16, 1877, deeded, two hundred acres to defendant Record.

Sold to Edwards —— acres.

To Skinner & Fitzgerald, one hundred and twenty-five acres.

Record and Edwards proved value of improvements and rents, etc.

In rebuttal plaintiffs showed that the land in controversy was surveyed March 6, 1849, by virtue of the headright certificate of L. De Zavalla; the same certificate sold Baker June 4, 1852, and on which patent issued October 12, 1852.

Plaintiffs themselves offered the record of proceedings in the probate court in evidence to show that Daws' administration was a nullity; and that, at the time of the sale, the certificate was not in his hands, but had been located.

Judgment was rendered for plaintiffs.

Allowance for improvements were made to Record and Edwards, and the statutory judgment entered for their protection. The judgment recites no facts as having been found by the court.

The defendants appealed, assigning as errors:

1. The court erred in its final judgment as to the law.

2. In holding that a land certificate can become realty before a patent issues on it.

3. In holding that upon the location and survey of a land certificate, it becomes merged in the land before a patent issues thereon.

4. In holding that the sale of the headright certificate of L. De Zavalla, and of any land located by virtue thereof in June, 1852, by A. C. Daws, administrator, did not pass the title of the land sued for to Baker, the purchaser.

5. In holding that the sale of the land certificate after its location and survey and before any patent had issued thereon, for cash, was a void sale.

6. In deciding that appellant Baker took no title, legal or equitable, under the sale of the certificate aforesaid, and any land located by virtue of it under the orders of the probate court.

7. In sustaining the administration, and yet taking the land from appellants without requiring appellees to refund the purchase money and interest, paid to the administrator.

8. In not sustaining appellants' plea of stale demand.

*E. L. Dohoney*, for appellants.

*Hutcheson & Carrington*, for appellees.

A. S. WALKER, J.— The right of appellants to the land depends upon the validity of the grant of administration under which the sale was made at which Baker purchased.

The validity of the administration "depends upon the facts as they existed at the time the letters were granted." Withers *v.* Patterson, 27 Tex., 501.

These facts can be ascertained from the record, supported by all presumptions which are indulged in support of the act as a judgment of a court of general jurisdiction. In other words, if jurisdiction is not negatived by the record it cannot be attacked in a collateral proceeding. This rule is stated in Guilford *v.* Love, 49 Tex., 741, by the late chief justice of

the supreme court. The paragraph on the subject is as follows:

"Justice Bell, in discussing the question of what may be presumed in favor of the action of county courts, as exhibited in their orders or judgments, in the case of Withers *v.* Patterson, says: 'The question presented in such cases is, how far is proof (which is wanting) to be supplied by presumption? The circumstances which would have authorized the court to act as it did 'act (within the limits of its jurisdiction being implied) are presumed to have existed.' 'But presumptions are indulged in the absence of proof and not against proof.' 27 Tex., 496 (citing authorities). . . . In Freeman on Judgments, sec. 132, on *Silence of Record*, he says (quoting from 35 Cal., 460): "It is of no consequence whether the jurisdiction of the court affirmatively appears or not on the judgment roll; for if it does not, it will be conclusively presumed' (citing authorities)."

Taking this as a guide, let it be applied to the record. The statement given in connection with this opinion gives a full digest of the proceedings in the probate court to be examined.

The administration granted in 1838 upon the estate of Lorenzo De Zavalla, who died in 1836, to his son Lorenzo, was, beyond question, valid.

This original administration was extended by express order twice. The last order of extension was until January, 1841.

In 1841 a partition of lands of the estate was made, regular in all respects. In the partition proceedings a city lot in Galveston and a labor of land on which the family resided in the junction of Buffalo Bayou and the San Jacinto river were reported as unsusceptible of partition. Certain personal property also was shown to the court to be unsusceptible of division, and to be of a perishable nature. Orders of sale were made for sale of the lands on twelve months' credit, as required by law. No terms of sale were fixed in the order for the sale of the personal property.

All the property ordered to be sold except the Galveston lot was reported as sold by the administrator to the September term, 1841. The aggregate amount of the sales was $3,997.50.

The report, there being but one, did not show the terms of sale. Under the law the land would be on twelve months' credit.

It would have been within the power of the administrator, after making these sales for partition, to have divided the money realized among the distributees — one-half to the widow and one-tenth to each of his brothers and sisters, as the lands were to be divided. It would also be the duty of the probate court, in event of his failure to do so, to enforce a disbursement of these funds. The proceeds of sale added to the money reported on hand, $3,997.50 + $2,246.01 = $6,243.51.

What became of this money is not disclosed. It is evident that the probate court had not relieved the administrator from his trust before his removal. On the minutes of the court, at its August term, 1842, about the time the sale notes would mature, is an entry, "Continued," applied to the administration. This may have been intended as an extension of time. At least it did not negative such extension.

January 2, 1843, application was made to the court by Fock, husband of the widow of the deceased, herself entitled to one-half interest in the estate, showing that the administrator had left the republic, and "had been absent from the republic for more than twelve months," "and that the estate is suffering from neglect," asking the removal of the former administrator and his own appointment as administrator *de bonis non.*

This application was entertained. Citation against the administrator was published, and he was removed. At the same time Fock was appointed to the administration. This appointment was made February 27, 1843. It does not appear from the record or otherwise that, at this time, any

of the estate had gone into possession of the heirs except the land partitioned (which was one and a half leagues on right bank of San Jacinto, in Harris county).

There was, so far as the records of the administration showed, the Galveston city lot (ordered to be sold), the headright league and labor certificate unlocated, though an advance of $70 appears to have been paid a surveyor to secure its location, the money reported, and the sale notes or proceeds therefrom.

These subjects, or some of them, may have needed attention; some may have been suffering from neglect; the sale notes may have remained uncollected. The court, upon such showing, confided administration. It cannot be said that there was nothing to administer; that the money had been collected and paid to the administrator; or that the remaining property had in fact passed into the hands of the heirs.

Having an unsettled estate suffering from neglect, the court had jurisdiction and exercised it.

We concluded, therefore, that Fock's appointment was valid.

If Fock's appointment was valid, his administration would be a continuation of the control of the estate by the court. His trust character would continue until lost by the action in some way exercised of the court, or by his non-action as such, for so long a time, or under such circumstances, that the court would refuse or lose its power to control his acts.

It would exist so long as the court should recognize him as such, and while those interested in the estate would allow it. It was not necessary that his term of administration be expressly extended, there being no law so requiring it as a condition of the legality of his acts. While recognized as such by the court, and he remained in charge of the property, he would be in law and in fact the administrator.

The record is meager and at times obscure as to the acts of Fock in his administration. He was tardy in executing the bond, but it was executed and it was approved by the court.

October, 1843, a complaint was exhibited against him by the county clerk representing "that the estate of L. De Za-,valla has been open for several years, and of the fees of office a balance remains unpaid," etc. Upon this a citation was issued. The rule against him appears to have been discharged upon his payment of all the clerk's costs.

In an entry made at the March term, 1844, it appears that Fock had taken the statutory oath, and that letters had in fact issued. Appraisers were appointed. No inventory, however, appears in the record. Yet there is no order taken against him for not filing it. Action in the court upon the estate appears to have been continued from term to term, with rare exceptions, until August, 1844, when an entry is made, "By consent of parties this estate is dismissed from the docket until called up by parties in interest." This was not a dismissal of Fock, nor did it relieve from his trust. Its effect may have been to relieve the call of the estate from month to month for orders. Its terms negatived a removal, in the provision that it could be replaced upon the docket for orders in course of further administration when necessary.

January 21, 1848, Fock applied for an order to sell the headright league and labor certificate, issued to the heirs for the support and education of the minors. At the March term thereafter, an order was made for its sale. Such sale was proper under probate act of 1846, art. 18, then in force. Continuances for account of sales were regularly entered until the January term, 1849, when citation was ordered requiring the return of such account. At the same term an order appears reciting that the records of the court "in the matter of this estate showed that the costs accruing to the officers of court are due and unpaid." Citation was ordered. *Alias* citations were returned served upon him March, 1849. This rule for costs never appears to have had final action.

At the October term, 1849, the record discloses, " On motion it is ordered by the court that the case be placed upon the docket; and further ordered that the business of the estate be continued until next term." Continuances were entered

for the three succeeding terms, December, 1849, January and February, 1850. March 12, 1850, Baker, the county clerk, filed his petition representing "that the estate has been administered, all the property sold except the headright of the deceased, and he is informed that all debts have been paid except one due your petitioner and officers of court for expenses of administration; . . . that the administrator of the estate, Fock, has lately died leaving petitioner's debt unpaid; that it is the wish of the widow of the deceased that said debt should be paid, and that for this purpose an administrator be appointed," asking Daws' appointment.

Under the probate act of 1840, art. 21 of act, costs of court are recognized as debts to be paid out of the estate next after expenses of last sickness. So in the act of 1848, art. 78. They were charges under the act of 1846, art. 24. Costs being chargeable to the estate were certainly *debts* to be paid; in this instance only out of the unadministered assets.

At Fock's death an order was pending against him to compel payment of costs. Early in his administration he had discharged a rule by paying the costs of the officer who was pressing it. The record, therefore, does not negative the existence of costs unpaid. There was in his hands, not sold nor passed from his possession to the heirs, the headright certificate. Debts and assets unadministered. So it appeared in the record. These facts were alleged in Baker's application; being verified by the record, the right existed to continue the administration. If existing at Fock's death, an equal right to its continuance remained in the probate court.

Again as to debts, besides the statutes cited, the administrator under our probate laws is a trustee for the heirs, etc.; his agency is upon the assets. His acts may impose charges for expenses or costs upon the property. Portis *v.* Cole, 11 Tex., 158. And the record showing costs existing, their non-existence or payment cannot be presumed, as was done in Duncan *v.* Veal, 49 Tex., 603. In such a case, and

where it appeared "that the estate had not been fully settled and distributed among the parties entitled thereto" (Frost v. Frost, 45 Tex., 342), the court held, "whether it was absolutely essential that further administration should be had upon it, or whether it was for the interest of the heirs or creditors that the administration should be longer continued, certainly it cannot be said that it was not within the power and jurisdiction of the court to grant letters *de bonis non* to complete its full and final settlement."

Given an administration legal in its inception, it becomes immaterial to its validity whether it was wisely exercised.

That property was lost or squandered in the course of the administration is a ground of complaint against the administrator in the probate court, or in direct proceedings for the revision of such errors.

That an administration was not formally extended did not affect its existence. Poor v. Boyce, 12 Tex., 449.

Nor that so long a time elapsed between the death of the intestate and the grant of letters *de bonis non*. Howard v. Bennett, 13 Tex., 314, 315.

Nor that there was an interval of several years between entries, or evidence of acts as such. Burdett v. Silsbee, 15 Tex., 610, 616.

Nor that an estate was consumed by costs and expenses, to the loss or want of benefit to the heirs. Kleinecke v. Woodward, 42 Tex., 311.

Nor is it believed that the sale under which Baker purchased was ineffectual to pass the location with the certificate. Simpson v. Chapman, 45 Tex., 566.

Limitation would run against an effort to avoid the sale for fraud, if fraudulent acts appear or can be shown. The plea of stale demand was rightly interposed against the attack for fraud. Kleinecke v. Woodward, 42 Tex., 311; Pearson v. Burditt, 26 Tex., 172.

It is our opinion, therefore, that Daws' administration, under which Baker purchased, was valid; that the objections to the proceedings antecedent to and in the sale and its confirmation were but irregularities, only available in a

direct attack, not to be available in the collateral; and that, as to any real or alleged fraud, even if it could be heard on a plea of not guilty in an action of trespass to try title, the lapse of time is so great that its availability as a defense is lost.

We, of course, are acting upon the record before us. Whatever the future researches in the records of the probate court may divulge, if anything, to exclude the court on the trial from according to the orders and decrees of the probate court the presumptions of regularity required in the absence of a negative on record, may be shown on the new trial consequent upon the reversal.

This opinion only decides that, as shown in the record, the jurisdiction of the court is not negatived as to the appointment of Daws; that the irregularities complained of, interposed at the time and in the manner urged below, do not vitiate the sale; and that the sale, if valid, passed also the location.

There was error in the judgment for plaintiffs, and for that the judgment should be reversed.

REVERSED AND REMANDED.

[Opinion delivered November 8, 1880.]