LOYD et al. v. WALLER et al.

(Circuit Court of Appeals, Fifth Circuit. May 12, 1896.)

No. 432.

1. JUDGMENTS—COLLATERAL ATTACK—JURISDICTION OF PROBATE COURT.

The heirs at law of one L. having brought an action at law against R. and W., to recover certain lands in Texas, for which a patent was issued to L. in 1856, R. and W. brought suit in equity against such heirs, to restrain the prosecution of their action at law, and assert an equitable title to the land. The bill alleged that the original certificate, entitling L. to locate lands, was issued to him in 1838; that he died, intestate, prior to 1844, before locating any lands; that in 1844 administration of his estate was granted, and in 1845 an administrator de bonis non, under an order of the probate court, sold the land to one B., who, in 1854, obtained a duplicate certificate, and located the land; that in 1856 a patent therefor was issued

in the name of L., though B. was the owner; and that B.'s title had passed by regular conveyances to R. and W., the complainants. On the trial, complainants offered in evidence a judgment of the probate court, appointing the administrator de bonis non of the estate of L. *Held* that, as the probate court was one of general jurisdiction in the settlement of the estates of decedents, its judgment could not be collaterally attacked for any irregularities in the exercise of the jurisdiction, and the judgment was properly admitted, though, it did not appear how the original administration had terminated, nor that any order had been made extending the term thereof beyond 12 months from the time when it was granted, and the appointment of the administrator de bonis non was made more than 12 months thereafter.

2. SAME—LAPSE OF TIME.
*Held*, further, that after the lapse of many years, during which the land had been conveyed and improved in good faith, it was sufficient to show the order of the probate court dealing with the subject-matter, and that the absence of an order extending the administration after 12 months did not invalidate the title of the purchaser at the administrator's sale.

3. SAME—CONFIRMATION OF SALE.
*Held*, further, that the confirmation by the court of the sale made by the administrator de bonis non was sufficiently shown by an order, entered after the receipt of his report of the sale, directing that the settlement made by him (apparently referring to the disposition of the proceeds of the sale) be accepted and received by the court.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

James B. Goff, for appellants.
Seth W. Stewart, for appellees.

Before PARDEE, Circuit Judge, and BOARMAN and SPEER, District Judges.

SPEER, District Judge.    Inez E. Loyd and a number of others, who are citizens of states other than Texas, which states are specified in the record, and who are the heirs at law of William M. Loyd, now deceased, but formerly of that state, brought an action at law in the circuit court of the United States for the Northern district of Texas, to try title to certain lands in that district, against Columbus Waller, a citizen of that state, and Thomas Ruddy, a subject of her majesty, Victoria, queen of Great Britain and Ireland, and empress of India.    A number of others, who were minors, were represented by next friends, and James B. Goff, Esq., was their attorney.    Columbus Waller and Thomas Ruddy, defending this action, presented a bill to the circuit court sitting in equity.    Their complaint is as follows:    That the plaintiffs in the action at law are claiming lands of the complainants, and rely upon a bare, naked legal title; that complainants are, and have been for a long time, in the possession of lands, and have the equitable title thereto; that the alleged title of the plaintiffs in the action at law is a cloud upon complainants' title, and prevents the sale of the land, by which the latter are greatly damaged.    Notwithstanding the true and equitable title of the complainants, Waller and Ruddy, the defendants would prevail in the action at law, unless the court should enjoin that action, and hear and determine the cause in equity.    The bill further states that, several years prior to 1844, William M. Loyd, who was the

original grantee of the lands in question, amounting to one-third of a league, died intestate, in San Augustine county, Tex. This was long before the lands were located, surveyed, or patented, and long before the issuance of the duplicate certificate, by virtue of which, under the laws of Texas, said lands were located and surveyed. Indeed, this certificate was not issued until the 14th day of July, 1854; and it was then issued upon the application of one T. G. Broocks, who had purchased the original headright certificate No. 397, issued by the board of land commissioners of San Augustine county, to William M. Loyd, before his death, namely, on the 23d day of February, 1838. William M. Loyd having been dead for some time, the original letters of administration were granted upon his estate by the probate court of San Augustine county. This was done at the February term, 1844; and, the original administrator having disappeared in some manner not known to the complainants, one John G. Berry was thereafter appointed by the same probate court administrator de bonis non of said estate. He duly qualified, and the bill alleges that, there being a necessity therefor, an order was granted by the probate court for the sale of the headright certificate No. 397 as a part of the estate. This was done conformably to law. Broocks became the purchaser, and gave $131 therefor, the certificate having been appraised at the value of $100. The report was duly made to the probate court on the 30th day of May, 1845; and, Broocks having paid his bid, the administrator made him a deed to the certificate. This was on the 2d of April, 1845. This deed was, however, destroyed, and another deed was made to Broocks by the administrator. This sale was duly and legally confirmed by the court, but, by some inadvertence, the order of confirmation was not entered of record until October 31, 1854, when said administration was still pending. The duplicate certificate was obtained by Broocks from the general land office on the 14th day of July, 1854; and, this certificate having been located upon the lands in controversy, patents were issued by the state of Texas on the 23d day of August, 1856. These patents were issued, however, to William M. Loyd, although, as stated in the bill, Broocks was equitably entitled to receive the patent in his own name, and was the equitable owner, by the purchase before described, of the certificate to lands thus located and patented. In 1859, Broocks sold the north half of the survey to one J. F. Williams, and the complainant Thomas Ruddy has a regular consecutive chain of title from the heirs of Williams to himself, and is now in actual, adverse possession of the lands; they being inclosed by him, and in actual occupancy. The other complainant, Columbus Waller, holds title to the south half of the survey. His title originates in the will of the said T. G. Broocks. This was duly probated, and the title proceeds to Waller, through a regular consecutive chain; and he is also in actual adverse possession of the south half of this survey, and has the same inclosed and in occupancy. Ruddy also alleges that he has been in possession of his half of the land for more than one year next before the 27th day of May, 1893 (the day the action at law was filed); and that he has made permanent and valuable improvements on it, amounting in

value to the sum of $1,460.    These improvements were made in good faith, Ruddy believing, as he states, that he had a good and perfect title to the land.    Waller also states that he was in actual possession of his share for more than one year next before the 27th day of May, 1893, and that he has also made permanent and valuable improvements thereon, amounting in value to the sum of $7,950.    His improvements were likewise made in good faith, with the belief that he had a perfect title to the land; and each of the complainants alleges that he and the persons under whom he holds have had and held the actual, adverse, continuous, uninterrupted, and peaceable possession of the lands for more than three years next before the institution of the action at law.    They each also allege that he and his predecessors used, cultivated, and enjoyed the lands, and held same under a regular chain of transfers from the state of Texas to himself.    Each alleges that he has paid all taxes chargeable upon his half of the survey, and this was done without any objection on the part of the defendants.    They pray that the defendants shall be required to answer the bill, and that they and their attorneys shall be prohibited and enjoined from further prosecuting the action at law; that the clouds upon complainants' title, respectively, shall be removed, and their title, as set out, be perfected, and the claims, legal titles, and demand of the defendants be canceled, and be declared null and void, and defendants perpetually enjoined from setting up the said claims against complainants or their legal representatives.    Exhibits to the bill show that Columbus Waller made a number of improvements on his land.    These consisted of 6 miles of wire fencing, grubbing and clearing 500 acres of mesquite land, breaking and putting in cultivation 510 acres, building a bridge across Baker's creek, and building a rock crossing on the creek, digging two wells of water, building an eight-room two-story house, and a two-room tenant house, a wheat granary with eight bins, and another wheat granary, a smokehouse, with a buggy shed, one storm and milk cellar, one corral, and lots thereto, and planting a peach orchard of over 100 trees.    These improvements aggregate in value $7,950.    Complainant Ruddy made improvements on his lands, which consisted of 1½ miles of fencing, breaking and putting into cultivation 400 acres of land, grubbing 200 acres of mesquite land.    He dug one well.    His improvements amount in value to $1,460.

The defendants answered the bill, and admitted that the land in question was patented to William M. Loyd on the 23d day of August, 1856, long after the death of said Loyd, who, as we have seen, died before 1844.    They deny that Broocks legally purchased the original headright certificate No. 397.    They deny that complainants have title to the land.    They admit that the original letters of administration were granted on the estate of William M. Loyd, as charged in the bill, and that John G. Berry was afterwards appointed administrator de bonis non, but deny that Berry was ever legally appointed administrator, or that he ever legally qualified as such.    They do not profess to know whether there was any necessity for the sale of the headright certificate, but they do deny that the administrator sold it, and they deny that a report of the sale was made to the probate

court on the 30th day of May, 1845, or at any other time, and deny that said certificate was legally sold. They do not know, they answer, whether T. G. Broocks became the purchaser of the certificate at the administrator's sale or not, or whether he paid for it, or whether it was appraised at $100, or whether Berry, as administrator, executed to Broocks a deed, as averred in the bill, or whether the deed was destroyed, and another deed was made; but they say, if it was done, it was done without authority, and is therefore void; and they deny that there was any sale or any legal confirmation of sale of lands, and that any attempt by Berry to pass the title to Broocks was null and void. The answer insists that the order of Hon. Alfred Polk, chief justice of San Augustine county, made in 1854, more than nine years subsequent to the alleged report of the sale of the certificate, was an original order, and was illegally made. The answer shows that the respondents are really the lineal descendants and the heirs at law of William M. Loyd, and the respondents insist that, as the legal title has not been properly divested, they are entitled to recover the lands in question, and that the application for an injunction should be refused.

The cause was heard in equity February 27, 1895, and a decree in favor of the complainants was entered. By this it was determined that the equitable title to the lands is clearly vested in the complainants, and the boundaries of the share of each were distinctly outlined by the decree. It is determined that the lands in question were originally granted to William M. Loyd on the 23d day of February, 1838, and that a duplicate certificate was issued to him by the commissioner of the general land office on the 14th day of July, 1854, and that the land was patented to him on the 23d day of August, 1856; that, prior to the date of his patent, he had died intestate; that letters of administration were duly and properly granted upon his estate in San Augustine county, Tex., to John G. Berry, and, as administrator de bonis non, Berry sold and conveyed the certificate granted to William M. Loyd for said land to one Travis G. Broocks, for a full and valuable consideration; the sale was duly and legally confirmed by the probate court, and this vested a full and clear title to the certificate in Travis G. Broocks, and that complainant Thomas Ruddy is now vested with the full and equitable title by a regular and consecutive chain of transfers from the said Travis Broocks to himself to the north half of said one-third league of land; that Columbus Waller is the full, clear, and equitable owner of the south of said one-third league, and holds under a regular and consecutive chain of transfers from Travis G. Broocks to himself. It appearing to that court "that apparent legal title to the land" was vested in the heirs at law of William M. Loyd, who are the respondents to the bill and the plaintiffs in the action at law, they were, by the decree, together with their attorney, James B. Goff, Esq., enjoined and restrained from further prosecution of the law action; and it is further decreed that said action at law shall be dismissed from the dockets of the court, at the cost of the plaintiffs therein. The bill awards costs to complainants, as against respondents. From this decree, the appeal is taken.

The complaints in the circuit court offered, on the trial, a judgment of the probate court of San Augustine county, appointing John G. Berry administrator de bonis non of the estate of William M. Loyd, deceased. This was objected to, on the ground that the complainants did not show when or in what manner the original administration had terminated; and, further, because they did not show any order of the probate court extending the term of the first administration beyond the expiration of 12 months from the date of the order by which it was granted. Counsel for respondents argue that, in the absence of such an order, it would be presumed that the administration had been duly closed, and that the court would be without jurisdiction to make the appointment of the administrator de bonis non. This evidence was admitted notwithstanding the objection, and, we think, properly. It was the action of a court of competent jurisdiction having special charge of matters of administration. Although there may have been irregularity on the part of the court in the exercise of that jurisdiction, its judgment cannot be collaterally attacked elsewhere. The court, having jurisdiction, is presumed to have done its duty. "Res judicata pro veritate accipitur." Brown, Leg. Max. 729. The Texas courts seem to be very clear in the enforcement of this principle. Murchison v. White, 54 Tex. 78, and Weems v. Masterson, 80 Tex. 45, 15 S. W. 590.

In the case of Murchison v. White, supra, the court says:

"It is believed that a careful analysis of the cases in this subject will show that in collateral proceedings the only contingency in which the judgment of a domestic court of general jurisdiction which has assumed to act in a case over which it might, by law, take jurisdiction of the subject-matter and the person, can be questioned, is when the record shows affirmatively that its jurisdiction did not attach in the particular case."

See, also, Freem. Judgm. §§ 131–134, 334; Christmas v. Russell, 5 Wall. 307.

It is equally clear, under the decisions of Texas, that the probate court is one of general jurisdiction in the settlement of the estates of decedents. Murchison v. White, supra; Guilford v. Love, 49 Tex. 715; Williams v. Ball, 52 Tex. 603; Bumpus v. Fisher, 21 Tex. 567. Nor did the fact of the failure to enter an order extending the administration after expiration of 12 months from the date of the order granting such administration invalidate, as it is insisted by the respondents, the title of the purchaser to the land at an administrator's sale. Howard v. Bennett, 13 Tex. 314; Poor v. Boyce, 12 Tex. 440.

These adjudications, which serve to protect titles acquired in good faith at such sales, are in accordance with the principles of equity. They would seem especially applicable here. In this case the certificate which was the original evidence of the title was sold by the administrator pursuant to an order. It was bought apparently in good faith, for more than its appraised value. It was the basis of the title which has come through many holders to the complainants, who believed that they held a perfect title, and who themselves cleared, cultivated, and improved the land at much cost. Now, after 48 years, the heirs at law of the original grantee seek to avail them-

selves of what seems merely a criticism on the regularity of proced-
ure in the probate court, had at a time when Texas itself was little
more than a wilderness. "We all know," said Mr. Justice Baldwin
for the court in Grignon's Lessee v. Astor, 2 How. 339, "that even in
the old states the record of these and similar proceedings are very
imperfectly kept. It is no matter of surprise that, in so new and
remote a part of the country where these proceedings were had, this
state of things should exist. It is enough that there be something
of record which shows the subject-matter before the court, and their
action upon it; that their judicial power arose and was exercised by
a definitive order, sentence, or decree."

The proposition that the administrator's sale of the certificate to
T. G. Broocks was not confirmed by the court is equally untenable.
It appears that on May 30, 1845, Berry reported the sale of the cer-
tificate in question to T. G. Broocks, for $131 cash. The report also
recites that no sale had been made for cash of certain other lots, and
prays the court for the order to sell the same on credit. Thereafter,
at the October term, 1845, of the probate court of San Augustine
county, this order was taken:

"It is ordered by the court that the settlement this day made by John G.
Berry, administrator of said estate, be accepted and received by the court;
and, on petition of the said Berry, it is ordered and decreed that the property
specified in said petition be sold on a credit of twelve months."

The subsequent order seems to import that the "settlement" re-
ferred to included the proper disposition of the proceeds of the sale
of the certificate to Broocks. Since it was accepted and received by
the court, it is necessarily implied that the sale from which these
proceeds arose was confirmed. The other property Berry was au-
thorized to sell on credit. There are no intervening orders, and, as
it is the first action taken by the court after the report of the sale
was filed, it sufficiently indicates that the court did then actually, if
not formally, confirm the sale. This seems an adequate confirmation
under the circumstances, if we are to accept, as is clearly proper, the
rule adopted by the Texas court of last resort.

In Moody v. Butler, 63 Tex. 212, it is declared that:

"Where there is any evidence of confirmation, or of something from which
an intention to confirm might be inferred, or something entitling the pur-
chaser to have the sale confirmed, the purchaser will be protected in his
claim of title to the land."

See, also, Neill v. Cody, 26 Tex. 289, and Simmons v. Blanchard, 46
Tex. 266.

Then, since there was a legally qualified administrator, a necessity
for a sale, an order for sale by the court, a return of sale reported to
the court, and a judicial confirmation, we are obliged to conclude
that the deed from Berry, administrator, to Broocks, did actually
divest the estate of William M. Loyd of the title to the land. It was
a proceeding in rem, to which all claiming under the intestate are
presumed to be parties, and they are concluded by it. McPherson v.
Cunliff, 11 Serg. & R. 432; Grignon's Lessee v. Astor, 2 How. 319.

That Broocks paid the purchase price is evidenced by the report of
the administrator that it was cash, and the deed conveying the

certificate admits the receipt of the purchase price. Indeed, while the administration was still pending, namely, October 30, 1854, a formal order and decree of the court confirmed the sale. The issuance of the patent in 1856 to William M. Loyd, it is true, passed the naked legal title to the heirs, but this inured to the holders of the true, superior, equitable title. Of the good faith of the complainants there can be no doubt. Now, to oust them from the possession of land conveyed so many years ago, and so long held and improved by themselves and their predecessors, would be not only contrary to the right which it is the duty of courts of equity to conserve, but might seem to foment litigation, and make uncertain that which is and ought to be the surest and safest means of community wealth, namely, the repose of its land titles.

Speaking of such sales the supreme court of Texas happily remarks:

"There are no sounder or more salutary adjudications than those which protect the titles fairly acquired by purchase at these sales. They are founded on the oldest and most sacred principles of the common law. Time has consecrated them. * * * They are rules of property on which the repose of the community depends. Titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral actions, or none can know what is his own; and there are no judicial sales around which greater sanctity ought to be placed than those made of the estates of decedents, by order of those courts." Poor v. Boyce, supra.

After a careful consideration of the record, we are satisfied that the decision of the court below has justly and lawfully determined the rights of the parties, and it is therefore affirmed.